MARY AGNES O'NEILL, Appellant, v. SIOUX CITY TERMINAL RAILWAY COMPANY, Appellee.

**MASTER AND SERVANT: Workmen's Compensation Act—Finding by**
**1  Commissioner.** A finding by the industrial commissioner, on substantial, competent, and supporting testimony, that an employee was, at the time of injury, engaged in interstate commerce, is conclusive on the courts.

**COMMERCE: Interstate Commerce—Empty Car.** A railway car may
**2  be** in the course of interstate commerce, even though the car be entirely empty.

**COMMERCE: Blending of Interstate and Intrastate Commerce.** An
**3  employee** must seek recovery under the Federal Employers' Liability Act when, at the time of injury, he was engaged in interstate commerce, even though, at said instant of time, he was also engaged in intrastate commerce.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

FEBRUARY 14, 1922.

ONE Patrick O'Neill was killed while employed as a switchman by the Sioux City Terminal Railway Company. His surviving widow seeks to recover compensation under the Work-

men's Compensation Law. From judgment denying her claim, this appeal is prosecuted. The facts appear in the opinion.— *Affirmed.*

*Humphrey Barton, J. P. Shoup,* and *T. P. Cleary,* for appellant.

*Chandler Woodbridge* and *Jepson, Struble & Anderson,* for appellee.

FAVILLE, J.—The appellee operates a terminal railway at Sioux City, which is connected with what is known as "the transfer." Several lines of railway entering Sioux City deliver cars at this transfer. Such cars are picked up by the appellee at the transfer and transported over its own tracks, by its own engine, to the points of final destination at certain packing plants.

At the time of the injury in controversy, it appears from the evidence that Patrick O'Neill was a member of a switching crew employed by the appellee. The switching crew had been to the transfer and had taken charge of a string of cars, part of which were to be delivered at the plant of the Cudahy Packing Company, and part at the plant of the Armour Packing Company. The portion of the train to be switched to the Armour plant consisted of nine cars. These were placed on a track belonging to the appellee, leading to said plant. After said cars had been so placed, all of the switching crew except O'Neill took the cars that were intended for the Cudahy plant, and placed the same at said plant. Thereafter, the crew, with the engine, returned to the switching track, where the nine cars destined for the Armour plant had been placed. The evidence shows that, when these cars were first placed upon this track, O'Neill was last seen upon the rear car of said string. These cars were left standing about 25 car lengths north from the gate of the Armour yard, at the time the remainder of the crew went to place the other cars at the Cudahy plant. It appears that it was O'Neill's duty to properly set the switch so that said cars could be moved to the Armour plant, and to open a gate or entrance leading to the Armour plant. It is shown that O'Neill had performed both acts.

The crew returned from the Cudahy plant and proceeded to move the nine cars toward the Armour plant. There was no witness to the tragedy, but in some manner O'Neill was run over by the cars in this movement and killed, as they were being backed toward the Armour plant.

I. The only question involved in this appeal is whether or not the decedent, Patrick O'Neill, was engaged in *inter*state commerce at the time he was killed. It appears from the record that a portion of the string of cars that were being moved to the plant of the Armour company, which cars caused the death of O'Neill, were engaged in *intra*state commerce. The evidence shows, however, that one of the nine cars that was being moved to the Armour plant, at the time of the accident, was "A.T.L. car No. 244," which had been delivered to the appellee at the transfer, on the day in question, by the Chicago, Milwaukee & St. Paul Railway Company; and the evidence tends to show that the shipment of this car originated in Chicago, and that said car was consigned to the Armour Packing Company at Sioux City. Said car No. 244 was an empty car of the Armour Tank Line. It was necessary for this car to pass over the tracks and be handled by the appellee company, in order to reach its final destination at the plant of the Armour Packing Company.

1. MASTER AND SERVANT: Workmen's Compensation Act: finding by commissioner.

It is urged by appellant that there is no sufficient competent evidence in the record to show that car No. 244 was being moved by appellee in *inter*state commerce at the time that O'Neill was killed. The car inspector employed at the Sioux City Terminal Company testified that car No. 244 came to the terminal over the Chicago, Milwaukee & St. Paul railroad. The yard clerk of the Milwaukee road produced the train record of July 4, 1915, from which it appeared that train No. 63 arrived from the east on July 3, 1915, and that car No. 244 was in said train, and that the shipment of said car originated at Station No. 4 in the Union Stockyards in Chicago, and that it was consigned to the Armour Packing Company at Sioux City. The witness testified that the train record book in which said entry appeared was not made by him, and that he did not know in whose handwriting it was made, but that it was one of the rec-

ords kept of the movement of cars, in the record room of the Milwaukee road. We gather from the evidence that it was a permanent record, that was required to be kept in the usual course of the business of the said railroad, and showed the point of origin and destination of all cars handled by the railroad at that point.

There was also evidence tending to show that the records of the waybills received by Armour & Company showed that said car No. 244 was at said time engaged in *inter*state commerce. The competency of this evidence is challenged by the appellant. It may be true that some of this evidence offered by the appellee in regard to the *inter*state character of the shipment of car No. 244 was not in strict compliance with the rules of evidence, as recognized in courts of record, but there was sufficient competent evidence, aside from that which is challenged, to warrant the finding of the industrial commissioner and of the district court that the decedent was engaged in *inter*state commerce.

A majority of the arbitration committee denied appellant's claim. On appeal, the industrial commissioner also denied the claim, and upon appeal from his finding, the district court of Woodbury County likewise denied the appellant the relief sought.

Section 17, Chapter 270, of the Acts of the Thirty-seventh General Assembly, provides, in part, as follows:

"The findings of fact made by the industrial commissioner within his powers shall, in the absence of fraud, be conclusive, but upon such hearing the court may confirm or set aside such order or decree of the industrial commissioner, if he finds: * * *

"(4) That there is not sufficient competent evidence in the record to warrant the industrial commissioner in making the order or decree complained of."

We have had occasion to construe this statute, and have held that the finding of the commissioner stands upon the same footing as the finding of a judge or a verdict of a jury, and that it is not to be set aside if there is evidence upon which the finding can rest. We have also approved of the rule that, if the evidence in the case supports the finding of fact as made by the commissioner, the court will not say that the commissioner acted

without or in excess of his powers, even though a court, if trying the facts in the first instance, might reach a different conclusion. *Rish v. Iowa Portland Cem. Co.*, 186 Iowa 443; *Bidwell Coal Co. v. Davidson*, 187 Iowa 809; *Pierce v. Bekins Van & Storage Co.*, 185 Iowa 1346; *Pace v. Appanoose County*, 184 Iowa 498. See, also, *Kraft v. West Hotel Co.*, 185 N. W. 895.

In *Flint v. City of Eldon*, 191 Iowa 845, we said:

"It is not within the legislative scheme to make a court the reviewer of the facts, and it has been repeatedly held that the court is forbidden to trespass upon the defined jurisdiction of the commissioner, the latter being the sole judge and the final judge of the facts."

Applying this rule to the instant case, we find from the record substantial competent evidence to sustain the findings of fact of the commissioner that the car No. 244 which the decedent was engaged in switching at the time of the accident was at said time being moved in *inter*state commerce.

In *New York C. & H. R. R. Co. v. Carr*, 238 U. S. 260, the Supreme Court of the United States very properly said:

"But owing to the fact that, during the same day, railroad employees often and rapidly pass from one class of employment to another, the courts are constantly called upon to decide those close questions where it is difficult to define the line which divides the state from interstate business. * * * But the matter is not to be decided by considering the physical position of the employee at the moment of injury. If he is hurt in the course of his employment while going to a car to perform an interstate duty, or if he is injured while preparing an engine for an interstate trip, he is entitled to the benefits of the Federal Act, although the accident occurred prior to the actual coupling of the engine to the interstate cars."

The car in question had its origin in Chicago, and its point of destination was the Armour packing plant. It was still in transit, and had not yet reached its final point of destination at the time of the accident. The act of the decedent, as a switchman, was one of the instrumentalities necessary to complete this act of transportation. It was, therefore, an act in interstate commerce. *Rhodes v. Iowa*, 170 U. S. 412; *McNeill v. Southern R.*

2. COMMERCE: interstate commerce: empty car.

*Co.*, 202 U. S. 543, 559; *New York C. & H. R. R. Co. v. Carr*, supra; *Pennsylvania Co. v. Donat*, 239 U. S. 50; *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S. 156; *North Carolina R. Co. v. Zachary*, 232 U. S. 248.

It is argued that car No. 244 was empty at the time, and hence not in interstate commerce. If the car was being transported in interstate commerce from its point of shipment in the stockyards in Chicago to the Armour packing plant at Sioux City, Iowa, it makes no difference whether it was empty or loaded at the time the decedent received his injury. *North Carolina R. Co. v. Zachary*, supra; *Chicago, R. I. & P. R. Co. v. Wright*, 239 U. S. 548.

The decedent was doubtless engaged in both *inter*state and *intra*state commerce. The rule is that, where an employee is at the same time engaged in both *intra*state and *inter*state commerce, and receives an injury, recovery for such injury can only be had under the Federal Employers' Liability Act, as the state statute on the same subject is excluded by reason of the supremacy of such act. *St. Louis, S. F. & T. R. Co. v. Seale*, supra; *Chicago, R. I. & P. R. Co. v. Devine*, 239 U. S. 52; *Second Employers' Liability Cases*, 223 U. S. 1, 53; *Michigan C. R. Co. v. Vreeland*, 227 U. S. 59, 66; *St. Louis, I. M. & S. R. Co. v. Craft*, 237 U. S. 648, 655; *New York C. & H. R. R. Co. v. Carr*, supra; *Taylor v. Taylor*, 232 U. S. 363.

3. COMMERCE: blending of interstate and intrastate commerce.

The cases cited by counsel for the appellant do not controvert the propositions above stated, nor their applicability to the facts in the instant case. In *Illinois C. R. Co. v. Behrens*, 233 U. S. 473, the particular service in which the employee was engaged at the time was wholly with regard to *intra*state freight from one part of the city to another, and the court held that this was not a service in *inter*state commerce, and so the injury was not within the Federal statute.

In *Chicago, B. & Q. R. Co. v. Harrington*, 241 U. S. 177, the employee was engaged in moving coal from storage tracks to coal chutes, and was not at the time engaged in *inter*state commerce, even though the coal had been previously brought from another state.

In *Lehigh Val. R. Co. v. Barlow*, 244 U. S. 183, the em-

ployee was a member of a switching crew, and was assisting in placing cars containing a supply of coal for the railroad company on an unloading trestle within its yards. The cars had previously reached their destination, and had been left on the siding of the company for seventeen days. The court held that the employee was not engaged in interstate commerce when these cars were being moved upon tho trestle for unloading purposes.

Other cases are of like character.

It being established that the decedent, at the time of the accident, was engaged in *inter*state commerce, it follows that the Federal Employers' Liability Act controls the right to compensation, to the exclusion of the provisions of the Workmen's Compensation Act of this state. *New York C. R. Co. v. Winfield,* 244 U. S. 147. It therefore follows that the judgment of the district court must be, and the same is,—*Affirmed.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.