GEORGE W. PARKINSON, Appellee, v. BROWN-CAMP HARDWARE COMPANY et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Fact Findings. Fact findings by the industrial commissioner on supporting testimony are conclusive on the courts.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 13, 1923.

IN November, 1920, claimant instituted proceedings before the industrial commissioner to recover compensation from the Brown-Camp Hardware Company and its insurer, London Guarantee & Accident Company, Limited, based on alleged injury sustained by claimant during March or April, 1918, growing out of and in the course of his employment with the Brown-Camp Hardware Company, which claimant alleged resulted in Pott's disease. On February 10, 1922, a committee of arbitration, upon hearing the claim, found that claimant suffered a personal injury arising out of his employment with the Brown-Camp Hardware Company on or about March 1, 1918, and that said injury resulted in total disability, and awarded plaintiff compensation at the rate of $13.29 per week. On March 20, 1922, on review hearing before the industrial commissioner, the decision of the arbitration committee was reversed, the commissioner holding that the existing disability of claimant did not arise out of his employment with the Brown-Camp Hardware Company. On appeal to the district court, on June 30, 1922, the court reversed the finding of the commissioner, and confirmed the finding of the committee of arbitration. From the decision of the district court this appeal is taken. The order of the district court is reversed, and the decision of the commissioner is confirmed.—*Reversed.*

*Chandler Woodbridge,* for appellants.

*James E. Goodwin,* for appellee.

ARTHUR, J.—The written decision of the commissioner was as follows:
"In the employ of the Brown-Camp Hardware Company, in March or April of 1918, it is alleged this incident occurred: In company with Alfred Lundgren, claimant was running a truck load of heavy hardware across the floor. Mr. Parkinson, who was pulling, fell down because of the giving way of a stake on the truck. He arose without assistance and proceeded with his usual duties. He lost no time and employed no doctor. He

continued his engagement with the defendant until August 3, 1918, when he quit to take work with the Rock Island Railway Company at higher salary. November. 20, 1918, claimant came down with the 'flu,' and was so sick that his life was in serious danger. About December 15th, he returned to his employment with the railway company, working till about March 20, 1919, when he was operated upon for gall bladder trouble. In the latter part of May, 1919, he returned to work, continuing till August 1, 1919. A second operation was performed August 16, 1919. Claimant resumed work October 24, 1919, continuing his engagement with the railway company until January 16, 1920, when, by the development of what is known as Pott's disease, he was disabled to such an extent as to necessarily retire him from further labor, a condition which has continued until the present time, and is doubtless permanent. The question at issue is as to whether or not this disability is chargeable to the incident of employment with the Brown-Camp Hardware Company, previously outlined. In his testimony before the arbitration committee, claimant gives his alleged accident considerable emphasis. He says he 'fell full length on the floor;' that he 'felt an awful pain in his back;' that he 'laid off two or three half days;' that he would have taken a good deal more time off on account of his distress, but that his superintendent, E. A. Rockholtz, would call him by phone and urge him to return to work; that, owing to the condition of his back, he 'wasn't able to lift anything scarcely at all;' that his 'back bothered him all the time.' Says he went to the railway work because his 'condition was getting worse.' In the record of this case appears defendant's Exhibit 1, introduced at the arbitration hearing. This exhibit is a statement given to counsel for the defense in this case by George W. Parkinson, October 5, 1920. The signature is identified by Parkinson, and his statements therein contained are admitted by him to be as he made them to counsel. In response to questions as to what time he had worked for the railway company, he mentions no loss of time until from November 20, 1918, to December 15, 1918. He says: 'I was off because I was sick; that was during the time of the influenza epidemic. I never could say I was well after I had the flu, in November, 1918. I never could straighten up because my back

always hurt me.' In response to the question, 'When did this pain between your shoulders begin?' the answer was, 'It began during the time I had the flu.' Variation in the medical testimony seems to be due almost wholly to various angles from which this case is regarded. In every case, we believe, physicians testify to the belief that, if the claimant was subject to pain in his back from the time of the Brown-Camp incident on, this incident is probably the inception of the existing Pott's disease. The affidavit of Dr. Steindler, submitted to the arbitration committee, assumes from statements of Parkinson that, following the alleged fall, 'the patient shows a history of continuous backache, and if not abating up to the time of his admission, it is reasonable to assume that his injury has contributed to the development of the tuberculosis of the spine.' In a subsequent affidavit, submitted at the review proceeding as defendant's Exhibit 5, Dr. Steindler says that, if the fall on the cement floor 'was not followed by Pott's disease pain, nor by the lighting up .of Pott's disease for a period of approximately nine months, and the man continued to work practically every day for nine months, and was not compelled to consult a physician, and at the expiration of approximately nine months, such man suffered an attack of the "flu," and such attack was shortly, or within a reasonable time, followed by the Pott's disease pain, and by the active lighting up of Pott's disease, then it is reasonable to assume that the attack of "flu" was the cause of the Pott's disease.' This statement seems to reflect the general professional opinion relative to this case. The disease must be based upon history that will justify a conclusion on this basis. What in the way of history is developed in this record? This case came to the attention of this department through a visit of the wife of the claimant in the latter part of September, 1920, two and a half years after the alleged accident, as shown by defendant's Exhibit 2 herein. A letter of inquiry, addressed to the employer, brings this reply from one of the partners: 'I know of no accident to him while in our employ.' November 19, 1920, arbitration petition was filed. A day was set for hearing, but continuance was made necessary by illness of claimant's counsel. A little later, it developed that the case had been placed in the hands of another attorney, who did not seem anxious to press

the issues. In the meantime, defendant was urging a hearing. Counsel now in the case appeared some time later in the record. Applying the rule in general litigation and in many compensation statutes, this case would have been barred by the statute of limitations nine or ten months before this action was brought. It is most unusual for a workman to be unable to locate more definitely than 'either in March or April' an injury upon which claim for compensation is made. Is it at all probable that, with continual backache and waning physical powers, beginning with the injury, claimant would have been utterly unable to locate within weeks the date of the alleged accident? While the employer has no knowledge of the fact, claimant insists he sent him notice of injury the day it occurred. This statement makes it the more peculiar that not even the month of the injury can be fixed. This department is not disposed to deny any workman any service called for in the way of affording opportunity for trying out issues in case compensation is denied. It is admitted, however, that long delay in bringing action without sufficient cause for the same does not tend to inspire confidence. The theory of counsel is that this claimant was in continual distress with backache all through the months following the incident at the Brown-Camp Hardware. If this is true, the claimant surely had such notice of injury as to move him to a demand for compensation, which, if denied, should have been submitted to litigation. It is important to scrutinize with care an incident alleged to have been the cause of compensable injury. Sometimes such incident is of decidedly minor character. Then it becomes necessary to carefully follow the experience of succeeding days and weeks, if in such case injury is alleged. Now what happened at that time in March or April of 1918 at the hardware store? Parkinson and Lundgren were wheeling the truck. The former, in the process, fell, but arose before Lundgren could reach him from the other end of the truck, and the work proceeded without delay. Lundgren says he does not remember whether or not he asked him if he was hurt, but the work proceeded, and the truck was immediately unloaded. This load consisted of kegs of nails weighing 100 pounds each, and bundles of sheet iron weighing somewhat more. All these were handled by Parkinson in the unloading process, according

to the story of Lundgren, admitted by Parkinson himself. He says Parkinson worked the rest of the day, and, as far as he can remember, until he quit the employ of the company; that he heard him make no complaint the rest of the spring and summer that he was there; that he knew nothing of any claim on the part of Parkinson as to having been injured at that time until a couple of years afterward. Defendant's Exhibit 4, admitted to the record at the review hearing, is an affidavit by E. A. Rockholtz, who was foreman of the department in which George Parkinson was employed at the hardware store. In this affidavit he says: 'I have a very hazy recollection that Parkinson did have some insignificant accident occur, but I cannot now state what it was that happened.' * * * 'I remember that I went to him and asked him if he was hurt, and he said he was not.' Furthermore, 'George Parkinson continued at his usual work, with no loss of time whatsoever, and never claimed to have suffered any injury * * * nor did I call him on the telephone at his home to arrange for him to come to work, because it was never necessary to do so. The first time I ever had or obtained knowledge that George Parkinson claimed any injury ever occurred to him while he was employed at the Brown-Camp Hardware Company was about October 1, 1920, when Mr. Camp advised me that Parkinson was so claiming; that Parkinson. worked every day until August, 1918, when he left the employ of said hardware company.' During the year following the incident at the hardware store, Parkinson was in the hands of several doctors, to whom he made no mention whatsoever of the Brown-Camp incident. The first time in our record of this case where the fall figures as an incident, is in the testimony of Dr. H. C. Whelpton, who says that, late in 1918, the time he had the 'flu,' Parkinson gave him the history of such a fall. For many months later, under serious treatment by other doctors, it is shown that no such mention was made. At the review hearing, two men working with him in the railway employment testified in the behalf of claimant. There would seem to be little weight in this testimony, from the fact that their memory is so very defective in the matter of the periods at which claimant was in service as a fellow workman. There was evidently no intentional misstatements made by these witnesses, but their

testimony as to condition of Parkinson upon his entering upon his engagement with them is so much at variance with all evidence as to physical condition at the time he left his former employment as to make it seem probable that they were twisted in their dates as to time when they observed the waning physical capacity of Parkinson. Following the 'flu' after he had returned to his railway employment, such condition was probably apparent, but hardly before that date, unless we discard much other direct and wholly disinterested evidence. A careful scrutiny of the record in this case leads to the conclusion that suffering with pains in his back and from any failing physical powers during nine months succeeding this alleged accident is highly improbable. It challenges credulity to assume that such a condition could have existed without the knowledge of men working with him every day meanwhile. That he should have failed to mention the fact to doctors who were diagnosing his case in the endeavor to locate physical ailment is more than a matter of mere oversight. In the statement of Parkinson in defendant's Exhibit 1, on page 2 thereof, he is asked: 'When did this pain between your shoulders begin?' the answer, 'It began during the time I had the flu,' positively corroborates other substantial evidence that the back trouble came nine months or more after the trivial truck incident. This alleged injury did not light up any latent disease. The conclusion is justified that the disease from which claimant now suffers gave no sign until after the serious experience with influenza. It is not reasonable to suppose that it had its incipiency in the Brown-Camp incident, when there is no competent or disinterested evidence in the record indicating imminent symptoms during nine months following the same. If this be true, this claim necessarily fails. If it be not true, then the claimant is seriously at fault in concealing the fact at a time when it would have been so easy to secure adjustment of his legitimate claim to compensation. It therefore becomes necessary to reverse the decision of the arbitration committee, on the ground that the existing disability of George W. Parkinson did not arise out of his employment by the Brown-Camp Hardware Company.''

We have set forth the decision of the commissioner because

we cannot better nor more accurately state the case from the record. Involved in this case was purely a disputed question of medical fact as to whether the alleged injury was the cause of the Pott's disease and the resulting disability, or whether the Pott's disease resulted from some other cause. This question was one of fact, and was solely for the decision of the industrial commissioner. After a careful examination of the record, we conclude that there was ample evidence to support the decision of the commissioner, and that the district court was in error in reversing the decision of the commissioner.

The conclusiveness of the finding of the industrial commissioner on substantial, competent, and supporting testimony has been considered and discussed by us in many cases, and we deem it unnecessary to enter into a detailed discussion of that proposition in this case, as such discussion would be merely cumulative. Supporting the proposition, see *Pace v. Appanoose County,* 184 Iowa 498; *Pierce v. Bekins Van & Storage Co.,* 185 Iowa 1346; *Miller v. Gardner & Lindberg,* 190 Iowa 700; *Jackson v. Iowa Tel. Co.,* 190 Iowa 1394; *Flint v. City of Eldon,* 191 Iowa 845; *O'Neill v. Sioux City Terminal R. Co.,* 193 Iowa 41.

We come to the conclusion, after a careful review of the record, that the decision of the district court should be reversed, and the decision of the industrial commissioner be sustained, because: (1) The case presents one of disputed facts, upon which question the finding of the industrial commissioner is final; and (2) the record furnishes ample support of the decision of the industrial commissioner. This results in reversing the decision of the district court and confirming the finding and order of the industrial commissioner.—*Reversed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.