JENNIE REYNOLDS, Appellee, v. GEORGE & HOYT et al., Appellants.

No. 45684.

NOVEMBER 12, 1941.

Hallagan, Fountain, Steward & Cless, for appellants.

Tomasek & Vogel, for appellee.

OLIVER, J.—This is a proceeding under the Workmen's Compensation Law, brought by the widow of George J. Reynolds against his employer and its insurance carrier on account of his death. The industrial commissioner, upon review, affirmed an award of compensation. This decision was affirmed by the district court, and the employer and its insurer have appealed. The sole issue was whether the death arose out of and in the course of the employment.

Aside from the medical opinion testimony the record is without serious conflict. Decedent was 39 years of age, a strong and vigorous man, apparently in excellent health and with no record of ailments or symptoms thereof. He was employed as a plumber, at which trade he had continuously worked for his employer for some years. At 10 a. m. Friday, November 25, 1938, in the course of said employment, decedent and his helper were lowering into a well a 35-foot pipe and cylinder, weighing 193 pounds. When the top of the pipe had been lowered to the top of the well pit, they kneeled upon planks which had been laid across the pit and continued to lower the pipe until its top was 12 or 18 inches below the planks. Decedent and his helper were then supporting the weight of the pipe with pipe wrenches by leaning over and reaching down into the pit from their crouching positions as far as they could stretch. Because of difficulties encountered in fastening the pipe at the bottom they were required to support its weight from this strained position for 5 or 7 minutes. During this time decedent exclaimed, "Well for gosh sakes, put something on, this is getting awful heavy." When the pipe was finally fastened, decedent straightened up, threw his hands to his head and exclaimed, "My God, what hit me?" and staggered off the plank to the ground. He also said, "I never had anything like this come over me before," and also complained of a headache. His lips turned blue, he was pale and perspiring, beads of sweat were on his brow, his breathing was fast and irregular. After a

few minutes rest he proceeded with the work and also did light work that afternoon and the next day (Saturday). On Friday evening he complained he had had a hard day and did not feel well. He was unusually quiet, was pale and his lips were blue. On Saturday he was very pale and was drowsy after his noonday meal. He ate little on Saturday evening, was pale and was blue around the mouth, was unusually quiet and drowsy. Sunday morning he took only a cup of coffee for breakfast. He frequently complained of a choked or smothering feeling in his chest and that he could not get his breath. Later he and his family drove to the home of relatives for dinner. Upon arriving there he said he did not feel well. He had another attack of the smothering feeling and shortness of breath. At 12:30 he ate an ordinary meal but ate no dessert. While sitting at the table he suffered another attack and went upstairs to lie down. He had difficulty in getting his breath, was very pale and blue around the mouth and complained of pain in his chest. Shortly thereafter he was taken in an automobile to see a doctor but collapsed in the automobile and was dead when the doctor saw him about 4 p. m. His body was embalmed and buried. On April 12, 1939, it was exhumed and an autopsy held.

The autopsy, performed by Dr. Glomset and witnessed by other doctors, disclosed that the brain and various organs of the torso were normal, except for some congestion of the lungs, kidneys, bladder and spleen and except for the heart, which showed a patch of arteriosclerosis in a branch of the left coronary artery, a dark clot of blood over the orifice of the left coronary artery and a small hemorrhage in the heart muscle surrounding this artery. It is not contended this patch of arteriosclerosis had any immediate connection with the death. Dr. Glomset, a witness for appellants, testified, in his opinion, death was caused by the blood clot stopping up the mouth of the left coronary artery; that the blood clot was caused by the hemorrhage; that the hemorrhage might have resulted from any one of various causes including a strain; that severe exertion will strain the heart more than an ordinary meal; that he would not say it was reasonably probable the lifting of the pipe caused the hemorrhage, that the cause was speculative. It was claim-

ant's theory that death resulted from acute dilation of the heart, resulting from the strain of handling the pipe.

The commissioner found death was due to an occlusion or stopping up of the mouth of the left coronary artery by a blood clot, which gradually formed from a rupture of the coronary artery tissues caused by the unusual exertion and strain of handling the pipe. This finding does not completely accord with the original theories of either claimant or appellants, nor is it supported in toto by the evidence of any one medical witness.

This appeal turns upon a narrow question. Appellants do not question the finding that death resulted from the stoppage of the artery by the clot of blood which came from the small hemorrhage, but contend there was not sufficient evidence to sustain the finding of the commissioner that the handling of the pipe caused this hemorrhage. We will advert briefly to some of the evidence upon this point.

Dr. Glomset, who testified the cause of the hemorrhage was speculative, also testified he could not tell whether this hemorrhage occurred 5 hours or 20 hours previous to death but that it had been recent, within a few days. Dr. McNamara, in answer to hypothetical questions, testified that, in his opinion, the handling of the pipe was the probable cause of the acute dilation of the heart, which, in his opinion, caused the death. He also testified that in the section sent him by Dr. Glomset there was a small hemorrhage in the heart muscle surrounding the left coronary artery. He was later questioned by the deputy commissioner:

"Q. Let me ask you, Doctor, to give me the benefit of the process of your reasoning by which you conclude that it was the over-exertion or the exertion described in the hypothetical question to you that caused the ultimate death in this case.

"A. In my opinion there was some unusual strain upon the heart, probably not necessarily because of the weight, but the awkward position under which he supported the weight. Then he had a certain amount of damage to the heart as indicated by that minute hemorrhage in the section, I only saw one section, but the hemorrhage was there, and that later it went

on and he did get his acute dilation, which may have been aggravated by eating that meal."

To recapitulate in the language of the trial court, Dr. McNamara "testified that the minute hemorrhage occurred at the time of the strain in lowering the pipe into the well, and that the hemorrhage was caused by such strain."

Section 1453, Code of 1939, provides in part that an order or decision of the commissioner may be set aside if there is not sufficient competent evidence in the record to warrant the making of the order or decision. This court has repeatedly held that where the facts are in dispute, or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the commissioner are conclusive. If the evidence presents a question which should have been submitted to a jury, if the trial were before a jury, then the court is bound by the findings of the commissioner. Reddick v. Grand Union Tea Co., 230 Iowa 108, 296 N. W. 800. And this rule is applicable where, as in this case, there is a conflict in expert opinion testimony. Lindeken v. Lowden, 229 Iowa 645, 659, 295 N. W. 112, 119.

Appellants cite Boswell v. Kearns Garden Chapel Funeral Home, 227 Iowa 344, 288 N. W. 402, and other cases, in support of their contention that the proof of causation was insufficient to support the finding and award of the commissioner. As we said in Lindeken v. Lowden, supra, a case somewhat similar to this:

"This isn't a case where the testimony was that the claimed cause might or might not or possibly could have brought about the death, as was * * * [the Boswell case and other holdings]. In this case, witnesses designate the alleged cause as the probable cause, or that which did cause the death. The cause is removed from the realm of mere possibility, and is definitely placed in the field of reasonable likelihood and probability."

The commissioner was not required to adopt the theory of either party as to the precise character of the injury to the heart. His function was to consider the evidence and base his findings upon that. Nor does a finding by the commissioner, which accords with the expert testimony of a witness upon certain

propositions, require him to accept as correct the testimony of said expert upon other and different propositions. As to evidence of this and every other category, it is his province and duty to cull the false or erroneous from the true.

The findings and award of the commissioner are supported by substantial evidence and the trial court did not err in affirming them.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.