ROBERT C. GATEWOOD, appellant, v. IOWA IRON & METAL COMPANY and IOWA EMPLOYMENT SECURITY COMMISSION, appellees.

No. 49906.

(Reported in 102 N.W.2d 146)

APRIL 5, 1960.

Francis J. Pruss, Pruss & Flores, of Cedar Rapids, for appellant.

Don G. Allen, of Des Moines, for appellees.

GARRETT, J.—Robert C. Gatewood filed his claim for benefits under the Iowa Employment Security Law. Hearing was had before a referee who made findings of fact and decided that claimant left his work voluntarily and without good cause attributable to his employer. This decision was affirmed by the Iowa Employment Security Commission and by the district court of Linn County which held there was sufficient competent evidence in the record to support the commission's finding and claimant has appealed.

I. For over four years appellant was employed by Iowa Iron & Metal Company in Cedar Rapids and was earning $54

per week as a laborer. He was father of seven children under eighteen years of age, was divorced, and by agreement his employer each week sent $25 to the clerk of the district court for child support. He was indebted to Public Finance Company but had made no payments to it over a period of years. It exacted from him an assignment of four or five dollars each week out of his wages to apply on his indebtedness and presented the assignment to Gatewood's employer.

Appellant testified: "A. We came in from work about 4:30 when we quit, and Larry Goldberg asked me to wait until the other boys left, which I did, and he told me about the wage assignment, and he said I was laid off until I got my affairs straightened out, and that is just the way it was. Q. And did he tell you at that time that he couldn't give you any of your check, is that right? A. No, he said that he would figure it some way. He gave me $25 that night and $27 and something was left. Q. The company, the Iowa Iron and Metal Company had been withholding from your check every week $25? A. Yes, I had them do that. * * *."

Upon finding himself without employment appellant went to the finance company and, by promising to pay it four or five dollars each week out of his pay when re-employed, induced it to give him a release, which was in the form of a letter addressed to the employer. The letter with formal parts omitted was: "We would like to have you release the wage assignment on Robert C. Gatewood, employee of Goldberg Junk Yard. We find that we have reached an agreement with Mr. Gatewood whereby we may have a chance of collecting our money another way. Will you please release this assignment until further notice from this company?" With the above release appellant returned to his employer and they had some further negotiations which are of pivotal importance so we shall set them out in some detail.

The basic question this court has to determine is whether or not the trial court erred in holding that there was sufficient competent evidence in the record to sustain the decision of the Iowa Employment Security Commission in holding appellant

was disqualified for benefits by reason of his having voluntarily left his employment without good cause attributable to his employer. We believe the judgment of the trial court is right and should be affirmed.

We set out here the evidence, or part thereof, which, if believed by the Commission, amply sustains its decision.

Mr. Morris Goldberg, secretary and treasurer of the Iowa Iron & Metal Company, testified with reference to the assignment: "Q. Now, on the strength of that, did you release his check? A. I did." He further testified: "And was anything said by you to him [about] coming back to work? A. He said, 'I'll see you in the morning.' Q. What did you say? A. I said, 'Okay.' Q. Did you expect him back to work? A. Yes, I did. Q. Now had he reported in the morning—that was, I believe, on March the 18th. A. 18th. Q. And he came to the office and [had] he reported on Wednesday, March the 18th, would he have had work? A. Yes. Q. And did he ever come back to work? A. No. Q. Has he ever contacted you since that time? A. No."

The following examination appears to have been conducted by the referee, without objection having been made: "Q. I'll ask you at this time if this is your signature, Mr. Goldberg? A. Yes, sir. Q. I'll read what is written over that signature. Will you kindly—this is on date of June 26, 1958. Mr. Pruss, you have examined this before the record was opened? Mr. Pruss [appellant's attorney]: Yes. Q. We'll kindly ask you to refer to original copy of 'Employers Statement of Facts', your date of March 31, 1958. You will note that our statement coincides with Mr. Gatewood's statement, namely, that Mr. Gatewood worked for us until March 14th. We were served with a wage assignment on that date by the Public Finance Company for wages due him. We advised Mr. Gatewood that we can't keep him employed until he will get his financial affairs straightened out. Mr. Gatewood failed to state to you that on March 18th he appeared in our office with a release from the finance company (copy in our files). We handed Mr. Gatewood [a] check covering amount due him, with the understanding that he will show up to work next morning. He failed to do so. * * * Q. Was that your statement? A. Yes, sir."

The Goldberg statement just quoted in part was no doubt filed with the Commission as an employer's report provided for by section 96.6(6).

"Q. I'll read what is written over that signature on March 14, 1958. You purportedly stated: * * * We handed him his check, with the understanding that he will make payment to the finance company, whatever amount they agreed upon, also pay $25 to the County Attorney, and he also advised us that he will be back to work the following morning. He failed to show up for work. He also failed to make any payments to above two mentioned. * * * Is that also your statement? A. Yes, sir. Q. And you declare under oath that he said, 'I'll see you in the morning', is that right? A. Yes, sir. * * * Q. You got this letter. Now you say that you expected him back the following morning? A. Yes, he told me that he would see me in the morning, and I took it for granted that he would be there in the morning, so I said, 'Okay.' Q. Now, he said, 'I'll see you.' That's a discrepancy there, and he says he didn't say 'in the morning' and you say he said 'I'll see you in the morning.' A. Well, I took it for granted it was—as long as the affair was all straightened out when he said, 'I'll see you in the morning' that he was going to show up for work."

Gatewood testified: "Q. * * * Did they say, 'Will you be in tomorrow?' A. No, they didn't. I stood there a while and nobody said nothing and I said 'I'll see you', and I walked out the door. Q. What did they say? A. Nothing. * * * Q. Did you tell them when you would see them? A. No, I just said, 'I'll see you', because I wasn't straightened out and that's what they told me when they laid me off—until I had things straightened out." There was much more in behalf of appellant which it would be needless to set out.

Section 96.6(10) provides: "Any order or decision of the commission may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * *

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

The trial court properly sustained the Commission and held there was sufficient competent evidence in the record to

warrant the making by the Commission of its decision that the claimant left his employment voluntarily and without good cause attributable to his employer. On the record we must affirm.

II. "It has been repeatedly held, under Code sections 1452 and 1453 [now sections 86.29 and 86.30], that where the facts are in dispute, or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the industrial commissioner are conclusive. If the evidence presents a question which should have been submitted to a jury if the trial were before a jury, then the court is bound by such findings. Reddick v. Grand Union Tea Co., 230 Iowa 108, 296 N.W. 800; Reynolds v. George & Hoyt, 230 Iowa 1267, 300 N.W. 530. Such holdings are likewise applicable to findings of Iowa Employment Security Commission." Wolfe v. Iowa Unemployment Compensation Comm., 232 Iowa 1254, 1256, 7 N.W.2d 799, 800.

See also Johnson v. Iowa Employment Security Comm., 239 Iowa 816, 32 N.W.2d 786; Spence v. Iowa Employment Security Comm., 249 Iowa 154, 86 N.W.2d 154.

III. Section 96.5 provides: "An individual shall be disqualified for benefits:

"1. *Voluntary quitting.* If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission."

In this case appellant was laid off pending settlement of certain personal financial difficulties. It cannot be said, on the record here, however, that he was discharged when, according to his employer, his place was open to him and the employer expected him to return to his work. As stated above, the Commission could find on the competent evidence introduced that appellant left his work voluntarily without good cause attributable to his employer. Wolf's v. Iowa Employment Security Comm., 244 Iowa 999, 59 N.W.2d 216; Iowa Public Service Co. v. Rhode, 230 Iowa 751, 755, 298 N.W. 794, 796, 797; Spence v. Iowa Employment Security Comm., supra; 81 C. J. S., Social Security and Public Welfare, section 167, page 255.

█ "As sometimes stated, the good cause for which a person may voluntarily quit work must involve some fault on the part of the employer." 81 C. J. S., supra.

█ IV. Appellant challenges the competency as evidence of the letter from the Public Finance Company to his employer. To the letter, set out above, appellant interposed the objection that "the letter itself is hearsay, and that no proper foundation has been laid for it and it is not competent and material."

The letter was a release of the assignment of wages. Appellant, on direct examination, testified: "Well, I came in there with the release. Q. From whom? A. From the Public Finance Company. Q. And this release was directed to the Iowa Iron and Metal Company, is that correct? A. That's right. Q. And it authorized them to pay you your entire check, is that right? A. Yes, it releases what I had coming."

Appellant having referred to it and stated its purpose and effect probably opened the door for its introduction and placed himself in a poor position to object to it on any grounds urged. An examination of the letter fails to disclose anything in it which could in any way influence a decision prejudicial to appellant. Without this letter there was sufficient competent evidence to support the holding of the trial court.

"In O'Neill v. Sioux City Terminal Ry. Co., 193 Iowa 41, 186 N.W. 633, incompetent evidence was introduced over objection, but we held that there was sufficient competent evidence aside from that." DeLong v. Iowa State Highway Comm., 229 Iowa 700, 714, 715, 295 N.W. 91, 98.

See Johnson v. Iowa Employment Security Comm., supra.

█ If the case against appellant were based entirely upon hearsay properly objected to, we would reverse. "* * * there must be found in the record evidence of a competent and recognizable probative character, to sustain the granting or the denial of an award. Royal v. Hawkeye Portland Cement Co., 195 Iowa 534." Swim v. Central Iowa Fuel Co., 204 Iowa 546, 548, 215 N.W. 603, 604.

V. Appellant contends "the real significance of the letter from the Public Finance Company to the Iowa Iron and Metal Company is that it brought forth an inference that Gatewood has

'straightened out' his financial affairs when his testimony is that they were in fact, not straightened out", and that the referee drew certain inferences from this hearsay testimony which decided the case. We do not deem it necessary to set out the findings of fact and conclusions of law of the referee and the commission. It is sufficient to say that we have examined them and find there is no basis for this contention of appellant.

■ It is true, as he states, that inferences and conclusions drawn from incompetent evidence are subject to the same objections that the incompetent evidence is subject to, but we are of the opinion, from the record, no unjustified inferences were drawn from the questioned evidence in this case.

■ VI. Appellant's final proposition is that an employee who has been discharged by his employer is not required to bear the burden of proving that he was not rehired by that employer. Section 96.4 with reference to eligibility conditions sets forth "required findings." This section provides that "an unemployed individual shall be eligible to receive benefits" on certain specified conditions. To bring himself within this section one has the burden of proving he is unemployed, which is substantially the same thing as proving he has not been rehired.

We have carefully examined all of the cited cases, many of which are referred to in this opinion, and find nothing in them which, in the light of the facts found, supports appellant's position.—Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.