Henry BRADBURY

v.

GENERAL FOODS CORPORATION
and Hartford Accident & In-
demnity Company.

Supreme Judicial Court of Maine.

April 11, 1966.

Bishop & Stevens, by Albert M. Stevens, Presque Isle, for plaintiff.

Hugo A. Olore, Jr., Presque Isle, John W. Ballou, Bangor, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

WEBBER, Justice.

The appellant Bradbury sought compensation as the result of an industrial accident which occurred on March 28, 1963. The issue here is whether or not the Industrial Accident Commission erred as a matter of law in awarding him compensation based on 40% partial incapacity rather than on total incapacity.

For the most part the facts are not in dispute. The accident occurred while the appellant was handling a heavy motor. He suffered a sprain or strain and temporarily lost the strength of his right wrist. He reported the event and received first aid treatment from the plant nurse. X-ray pictures disclosed no fracture. He finished the work of the day and continued thereafter to work until April 22, 1963. He had some pain and swelling in the right wrist which at first subsided but later recurred. He entered the hospital shortly after April 24, 1963. His left hand and left knee had first begun to bother him just before he entered the hospital. While he was hospitalized he developed bunches on both arms and after his discharge he began to experience difficulty in the area of his neck and shoulders. By September 22, 1963 he was totally incapacitated.

The medical witnesses, Dr. White and Dr. Page, were in agreement that the claimant is suffering the typical effects of rheumatoid arthritis, a disease involving demineralization and thinning of the bone structure. They disagreed, however, as to the causal relationship between the injury on March 28, 1963 and the subsequent incapacity. Dr. White, although recognizing that the cause of the disease is unknown,

was of opinion that the claimant had a pre-existing but dormant arthritic condition which was activated and accelerated by the wrist injury, and thereafter "spread like fire" to other parts of the body. The witness further stated that a "flare-up" of the disease can be "set off" by physical or emotional strain or even such things as sudden dampness. Dr. Page expressed his belief that the accident had nothing to do with the claimant's rheumatoid arthritis, that no one knows the cause of the disease and therefore that he did not know and could not say whether or not the incident in March contributed in any way to the subsequent manifestation of symptoms. The Commission was satisfied that the claimant had a pre-existing but quiescent condition of rheumatoid arthritis which was "lighted up" in the area of the right wrist, hand and arm by the accident; but the Commission was not convinced that the generalized arthritis affecting other parts of the body had been shown to be so related to the wrist injury.

In essence the learned counsel for the appellant contends that the Commission was obliged as a matter of law to evaluate the testimony of these medical experts on an "all or nothing" basis; that since it was willing to accept the conclusion of Dr. White that this injury to the right wrist could and did precipitate the acute symptoms of a hitherto dormant disease, it could not properly confine that causal relationship to the limited area of the right wrist, hand and arm but was compelled to find that the entire generalized arthritic deterioration was the result of the injury. We are not persuaded that the role of the Commission as factfinder is so restricted.

 39 M.R.S.A. § 99 provides in part that a decision of the Commission "in the absence of fraud, upon all questions of fact shall be final." We look only to see if the decision rests on some legally competent and probative evidence and is not merely the result of speculation, conjecture or guesswork. Goldthwaite v. Sheraton Restaurant et al. (1958), 154 Me. 214, 145 A.2d

362, 79 A.L.R.2d 881; Mailman's Case (1919), 118 Me. 172, 177, 106 A. 606.

In Zoller v. Barnard, Porter, Remington & Fowler (1955), 1 A.D.2d 721, 146 N.Y.S. 2d 759 the facts were so similar to those in the instant case that we quote from the opinion at length:

"One physician attributed claimant's entire disability to cerebral arteriosclerosis and gave an opinion that none of his disability was due to the industrial accident. Another physician testified that claimant did receive a head injury in the industrial accident which either caused his total disability or aggravated the arteriosclerotic changes in his brain. The Board found that claimant was permanently *partially* disabled as the result of the industrial accident and fixed the amount of compensation accordingly. Claimant argues that there is no competent medical testimony that only a portion of his mental difficulties resulted from the industrial accident and that the Board was required to find either that there was a *total* permanent disability as the result of the industrial accident or that *none* of the disability was caused thereby.

The Board was not required to accept or reject the whole of each medical opinion. It had the right to weigh the conflicting opinions in the light of the record as a whole and to determine that only a portion of claimant's disability was due to the industrial accident. There is substantial evidence to support this determination." (Emphasis ours.)

In Reynolds v. George & Hoyt (1941), 230 Iowa 1267, 300 N.W. 530, 532, the Court said: "Nor does a finding by the commissioner, which accords with the expert testimony of a witness upon certain propositions require him to accept as correct the testimony of said expert upon other and different propositions. As to evidence of this and every other category, it is his province and duty to cull the false or erroneous from the true." Speaking of a medical expert witness, the Massachusetts Court in In Re

Luczek's Case (1957), 335 Mass. 675, 141 N.E.2d 526, 528 said: "The (factfinders) were free to accept such portions of his testimony as they thought credible * *." And in Travelers Insurance Co. v. Rowand (1952), 5 Cir., 197 F.2d 283, 285, the Court said: "While a juror may not arbitrarily reject the testimony of any witness, he may pick and choose the part that, after fair consideration, he believes to be true, and may base his verdict upon it, rejecting whatever he sincerely believes is false. This applies, not only to the facts in evidence, but to the expert opinions of witnesses who are in every way qualified to express their opinions upon medical or scientific facts." A similar view is expressed in Muenz v. Kelso Beach Improvement Association (1956), 181 Pa.Super. 105, 124 A.2d 153, 155, and in Zilek v. C. C. Coal Company (1958), 186 Pa.Super. 628, 142 A.2d 507, 509.

■ In the instant case the Commission was justified in assessing the medical opinion of Dr. White in the light of the cautionary reminder expressed in the testimony of Dr. Page. It is nowhere contended that the cause of rheumatoid arthritis is known or that any exact scientific data exists which defines whether or to what extent trauma can or does "light up" a dormant arthritic condition. The Commission could properly take into account the fact that for nearly a month the symptoms of aggravation of the disease were confined to the right hand, wrist and arm and that there was no rapid extension of symptoms to other parts of the body subsequently affected. We cannot say that the Commission could not properly conclude on the basis of all the evidence that it was entirely probable that a causal relationship existed between the industrial accident and the limited body area in proximity to the point of injury but that the causal relationship between this injury and the later manifestations of the disease in other and more remote parts of the body remained in the area of conjecture and speculation. It is nowhere suggested that if the incapacity attributable to the accident is thus restricted, an assessment of 40% partial incapacity is erroneous.

The appellant relies on Eleanora Gagnon's Case (1949), 144 Me. 131, 65 A.2d 6. In that case, however, the claimant was suffering from a back injury which in and of itself produced a 75% partial incapacity. The continuing effect of this injury upon a person already suffering from Parkinson's disease was such as to cause total incapacity. The Court held that under these circumstances the Commission's award of compensation based on partial incapacity could not be sustained. The Court likened the dormant disease to a prior injury. No issue was presented, however, as to the *extent* to which Parkinson's disease was "lighted up" by the trauma. In the instant case the claimant is not suffering any incapacity from the sprain or strain of the wrist per se. He is suffering only from the effects of generalized rheumatoid arthritis and, as we have already said, the evidence justifies a finding by the Commission that the disease was "lighted up" by the compensable injury only in the right hand, wrist and arm. Thus the injury itself taken in conjunction with those acute symptoms of the disease which it produced in a limited area of the body resulted in no more than 40% partial incapacity. In effect the Commission concluded that acute symptoms of the disease in other parts of the body which occurred later and which eliminated all of the appellant's remaining capacity for work have not been shown to be linked to or caused by the initial trauma. In *Gagnon* the Court noted that there was no evidence "to indicate that her capacity to earn the wages which she was receiving at the time of the accident has been impaired because of the disease. Except for the accident she might still be able to earn the same wages. Assuming that she could, the appellees would be responsible for her total incapacity." In the instant case the contrary appears. The acute symptoms of the disease have beset virtually the entire body and effectively destroyed earning capacity. In effect the Commission has found, justifiably as we

have said, that 60% of total incapacity is attributable exclusively to subsequent acute manifestations of the disease not caused by or attributable to the accident, and thus it cannot be said in this case that except for the accident the appellant might still be able to earn the same wages he was receiving before it occurred. We repeat for emphasis that the "lighting up" of the disease by the accident, localized in a limited area of the body in which this occurred, accounts for no more than 40% of the existing incapacity. Having thus found the facts, the Commission properly concluded that defendants are not legally chargeable with responsibility for the acute arthritic condition generalized throughout the body which now produces total incapacity. We are satisfied that the cases are distinguishable upon their facts and we cannot say that in the instant case the Commission has committed an error of law in deciding the controlling issue of fact adversely to the claimant.

Appeal denied. Decree affirmed. Respondent ordered to pay petitioner counsel fee of $250 plus cost of record.