Michael K. RITCHEY, Appellee,

v.

IOWA EMPLOYMENT SECURITY COMMISSION, Appellant.

No. 2-56162.

Supreme Court of Iowa.

March 27, 1974.

Rehearing Denied May 16, 1974.

Walter F. Maley and Blair H. Dewey, Des Moines, for appellant.

Nash & Eller, Denison, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal turns on a finding of fact by the Iowa Employment Security Commission.

To be eligible for unemployment compensation, an unemployed individual must be "earnestly and actively seeking work" and the Employment Security Commission must find that he "has registered for work at and thereafter has continued to report at an employment office in accordance with such regulations as the commission may prescribe." Code 1973, § 96.4(1) and (3). Under this statute, the commission promulgated and the legislative rules committee approved rule 3.1(1)(a), (b), and (c), requiring a claimant to file his claim and register for work at the office most accessible to him and then to continue to file claims in person or by mail at such intervals as prescribed by a commission representative. Unemployment compensation is paid weekly. Claimants are furnished claim forms to file weekly, on which they must state whether they worked during the preceding week and must name the employers from whom they sought work that week. If a claim form is not thus filed for a given week, compensation is not paid for that week, except that the commission may for good cause accept a claim up to seven days late. 1973 I.D.R. 257.

Claimant Michael K. Ritchey worked for Rasmussen Lumber Company and then for Marvin's Provisions, Inc. Later he had an opportunity to return to Rasmussen for better wages. One noon he quit Marvin's without notifying the manager and went back to Rasmussen. Still later he was laid off by Rasmussen. Marvin's had work for claimant but, perhaps feeling embarrassed about the circumstances of his leaving that employer, claimant did not reapply for

work there. Instead, on January 30, 1972, he filed a claim for unemployment compensation. He was given the claim forms to file weekly, and he did fill out and file them for the weeks of February 5 and 12, 1972.

Since claimant's benefits were chargeable proportionately against Rasmussen's and Marvin's accounts, the commission notified those employers of the claim. Marvin's objected in writing to the claim on the ground that Marvin's did not lay claimant off: "This man checked out before lunch and did not return. He did not notify anyone he was leaving or why. I [Marvin C. Rehbein] definitely feel that we have no liability in this case." This objection temporarily held up payment of the claim and set the wheels in motion for a fact-finding interview of claimant and of Marvin's followed by a ruling by a claims deputy on Marvin's objection. See summary of commission procedure in Note, 35 Iowa L.Rev. 79. Claimant and Marvin's were notified that the interview would be held on February 24, 1972, at the employment office in Carroll, Iowa. Claimant did not attend the interview for asserted reasons which we will presently state. A representative of Marvin's telephoned in and found that claimant had not appeared; hence no one from Marvin's attended. The commission interviewer sent his report to the commission marked, "Neither party appeared for statement."

Claimant ceased filing claims and reporting to the employment office. On May 18, 1972, a commission claims deputy overruled Marvin's objection and held that although claimant voluntarily quit at Marvin's, claimant was nevertheless eligible for benefits because after he quit he earned more than nine times his weekly benefit amount, which washed out his "voluntary quit" under § 96.5(1)(g) of the statute. The commission so notified claimant and Marvin's. That notice precipatated two administrative proceedings.

On May 19, 1972, Marvin's appealed from the claims deputy's decision to a com-

mission hearing officer. In its appeal Marvin's stated that claimant "should be disqualified because if he had been actively and earnestly seeking employment he would have applied here. We could have used him and there would have been no need for him to apply for compensation." The legal basis for Marvin's appeal, however, was that claimant voluntarily quit. See § 96.5(1), supra. After a hearing, the hearing officer affirmed the claims deputy's ruling under the same provision cited by the claims deputy, § 96.5(1)(g), and Marvin's appealed no further. The first of the two administrative proceedings ended at that point.

The other administrative proceeding began on June 29, 1972. Claimant could not of course retroactively report for work for the weeks he did not report. But on June 29, 1972, he submitted weekly claim forms requesting payment of benefits retroactively for the weeks from February 19 through May 20, 1972. He also filed a paper in which he asserted that he did not attend the interview of February 24 because of illness but sent his wife, that someone at the employment office told his wife claimant was ineligible because Marvin's was objecting and claimant would not be able to draw benefits, that the person at the employment office said he "would check into it and notify me," and that claimant therefore no longer reported to the employment office weekly or filed the weekly claim forms.

Subsequently a claims deputy denied claimant's request for payment of benefits retroactively. Claimant appealed to a hearing officer.

A hearing on notice was held on August 4, 1972, at the Carroll employment office. Claimant was represented by counsel. The principal fact question at the hearing was whether the assertions in the paper claimant filed were true. Unfortunately, no one with personal knowledge testified on August 4. Claimant did not present his wife as a witness; he was unable to say who the commission representative was his wife

allegedly talked to; the hearing officer tried to ascertain who that representative was but was unable to find such a person; and no one could testify from Marvin's since no one from there attended the interview which was to have been held on February 24.

Claimant himself was the only witness on August 4. He testified as to what his wife allegedly told him someone at the employment office told her. The commission accepts hearsay testimony for what it may be worth. See Code 1973, § 96.6(6).

Claimant testified he received notice of the February 24 interview. He further testified:

And I was sick at the time and I didn't want to miss it, so I had my wife come over. And when she came over and talked to them, they told her here that I had been disqualified and wouldn't be eligible for unemployment. . . .

Well, she come home, and she said that the reason I had gotten the letter is because I had quit Marvin and walked off the job, and that he was fighting it and that I was ineligible to draw unemployment because I quit. . . .

Q. All right, now then did your wife tell you when she came home and said you'd be disqualified, that you did not any longer need to send in those cards on a weekly basis? A. No, sir, she just said that I had been disqualified and wasn't eligible to draw unemployment.

Q. And is this the reason, then, that you discontinued sending in your cards? A. Yes, sir.

Following claimant's testimony, the hearing officer and claimant's counsel engaged in a colloquy in which claimant's counsel stated:

Well, just speculating, my guess is that he probably told her what is, you know, properly—the law, and then she probably just simply misunderstood it. It happens, you know, all the time in law offices. And as a result she went home and just misrelayed information to her husband. This is my guess as what happened.

After the hearing, the hearing officer considered the testimony and found that claimant had not established a commission representative told claimant's wife claimant was disqualified and would not be eligible for benefits. The hearing officer therefore denied the late claims under § 96.4(1) of the Code and rule 3.1(1)(a) and (b) of the commission.

Claimant appealed to the commissioners of the commission, who reviewed the case and unanimously affirmed the hearing officer's finding and ruling. Claimant then appealed to district court, which reversed the commissioners' decision and allowed the late claims. The commission appealed to this court.

In this court the commission asserts the district court erred (1) in allowing the late claims (2) in adding interest to them and (3) in directing payment of the benefits jointly to claimant and his counsel. At the bar, claimant admitted the second and third assigned errors, and so we do not consider them. We proceed, therefore, to the first assigned error—the merits of the controversy.

The merits present two questions. As a factual matter, did the trial court err in overturning the commission's finding claimant failed to establish his contention of fact that a commission representative told his wife he was disqualified and would not be eligible? As a legal matter, would the commission be required to allow the late claims if claimant did establish that contention of fact?

I. The statutes on appeals from the commission are quite similar to those on workmen's compensation appeals. Code 1973, § 96.6(9) and (10), §§ 86.29, 86.30. In workmen's compensation appeals, we accord the commissioner's fact-findings the

deference which we give to jury verdicts. Holmes v. Bruce Motor Freight, Inc., 215 N.W.2d 296 (Iowa). Hence in unemployment compensation appeals, as in workmen's compensation appeals, if the evidence presents a question which would be submitted to the jury were trial by jury, the courts are bound by the commission's findings. This court stated in Wolfe v. Iowa Unemployment Comm'n, 232 Iowa 1254, 1256–1257, 7 N.W.2d 799, 800–801:

> It has been repeatedly held, under Code Sections 1452 and 1453 [now §§ 86.29 and 86.30 of workmen's compensation law], that where the facts are in dispute, or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the Industrial Commissioner are conclusive. If the evidence presents a question which should have been submitted to a jury, if the trial were before a jury, then the court is bound by such findings. Reddick v. Grand Union Tea Co., 230 Iowa 108, 296 N.W. 800; Reynolds v. George & Hoyt, 230 Iowa 1267, 300 N.W. 530. Such holdings are likewise applicable to findings of Iowa Employment Security Commission.

See also Gatewood v. Iowa Iron & Metal Co., 251 Iowa 639, 102 N.W.2d 146; Note, 35 Iowa L.Rev. 79, 84 ("The party appealing the determination of [an unemployment] benefit claim is not allowed a *de novo* hearing.").

■ Claimant admitted throughout the proceedings that he did not weekly report for work and file his claims. To avoid the legal effect of that admission, he asserted he was told through his wife he was disqualified—and therefore he did not report and file. The burden was on him to prove his assertion and his entitlement to benefits. Moulton v. Iowa Employment Security Comm'n, 239 Iowa 1161, 34 N.W. 2d 211; Meredith Publishing Co. v. Iowa Employment Security Comm'n, 232 Iowa 666, 6 N.W.2d 6; Dallas Fuel Co. v. Horne, 230 Iowa 1148, 300 N.W. 303; Note, 11 Drake L.Rev. 125, 135.

■ To sustain his burden, claimant introduced hearsay evidence that his wife came to the employment office and talked to them and they told her claimant was disqualified. We will assume arguendo that "they" were in a position of authority to bind the commission. We will also assume arguendo that claimant's hearsay evidence generated a fact question which would have supported a finding for claimant had the commission believed it, although see Johnson v. Iowa Employment Security Comm'n, 239 Iowa 816, 32 N.W. 2d 786; Wilson Trailer Co. v. Iowa Employment Security Comm'n, 168 N.W.2d 771 (Iowa). Moreover, the commission could not lawfully act arbitrarily and had to consider this evidence, although having considered it, the commission was not bound to believe it. 2 Am.Jur.2d Administrative Law § 443 at 252; 73 C.J.S. Public Administrative Bodies & Procedure § 126 at 447; Jaffe, Judicial Review: Questions of Fact 69 Harv.L.Rev. 1020, 1031. Claimant's problem is that the commission did not believe it.

Several circumstances revealed by the record may indicate the reason the commission found as it did. Why did claimant not produce his wife as a witness if she did go to Carroll and did talk to the interviewer or to some other representative of the commission? Why did the interviewer write "Neither party appeared for statement" on his report if claimant's wife appeared on claimant's behalf? Why was the hearing officer unable to find the person who talked to claimant's wife? Why, if claimant's wife appeared for him at Carroll, was not Marvin's told over the telephone that claimant's wife had appeared? Why would someone at Carroll tell claimant's wife that claimant was disqualified for voluntarily quitting when the decision was for a claims deputy and the statute contains no less than seven exceptions to the voluntary-quit rule? See § 96.5(1)(a) through (g). See also I Iowa Uniform Jury Instructions, No. 1.5 (1970) (reasonableness and probability of witness' testimony may be considered on credibility).

Since claimant had the burden of proof and the commission did not believe his evidence, the commission had to find as it did. 4 Davis, Administrative Law Treatise, § 29.06 at 148 (1958) ("When the party having the burden of proof fails to produce evidence which the tribunal believes, the finding must be in favor of the opposing party, even if the opposing party has produced no evidence.").

For the trial court to overturn the commission's holding, the court would have to say claimant proved this claim as a matter of law. This the court could not say, for at best claimant generated a question of fact; had the matter been tried to a jury, the court would have had to submit the question to the jury. Seldom does a party having the burden of proving a proposition establish it as a matter of law. Hepp v. Zinnel, 199 N.W.2d 68 (Iowa). The commission's findings on fact questions are binding on the courts. Wolfe v. Iowa Unemployment Comm'n, 232 Iowa 1254, 7 N.W.2d 799.

The trial court erroneously overturned the commission's finding of fact.

II. Since the commission must prevail on the factual question, we have no occasion to consider the legal question.

Claimant's petition in district court must be dismissed.

Reversed.