The Brown-Brockmeyer Co., Appellee, *v.* Bd. of Review, Bureau of Unemployment Compensation, Appellant.

(No. 1719—Decided May 6, 1942.)

Mr. *A. K. Meck,* for appellee.

Mr. *Thomas J. Herbert,* attorney general, and Mr. *J. M. Woy,* for appellant.

BARNES, J.   The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judg-

ment of the Court of Common Pleas of Montgomery county, Ohio.

The original proceeding arose out of a claim of one Mrs. Mabel Braden Crowe, presented to the Bureau of Unemployment Compensation, asking for benefits during a period of unemployment. Her claim was filed February 5, 1940, and was allowed with payments of $10.25 per week, to be made for sixteen weeks after a three weeks' waiting period, if still unemployed.

The employer, The Brown-Brockmeyer Company, requested a redetermination, and on March 27, 1940, the administrator affirmed the former allowance of claim. From this the employer appealed to the board of review on April 6, 1940. On its appeal the matter was heard by a referee, who, on September 5, 1940, affirmed the decision of the administrator. From this decision the employer appealed to the board of review for a further hearing, and the board held a hearing at Dayton on March 12, 1941, at which time testimony was taken, and on May 13, 1941, the holding of the referee was affirmed.

The employer appealed from this decision of the board of review to the Common Pleas Court of Montgomery county, where the case was heard upon the transcript of the testimony and the proceedings had before the board. The Common Pleas Court reversed the decision of the board of review on November 10, 1941. From this judgment of the Common Pleas Court the board of review appealed to our court.

The right of appeal and the procedure in reference thereto as in force at the time in question was provided in Section 1346-4, General Code (118 Ohio Laws, 35), effective February 28, 1939. Among other things, this section provides that:

"Any employer or employee who may be affected by the decision of the board of review or of a referee,

where an appeal has been disallowed by the board, may, within thirty days therefrom, appeal from such decision to the Court of Common Pleas of the county wherein said appellant, as an employee, is resident or was last employed, or of the county wherein the appellant, as an employer, is resident or has his principal place of business in Ohio. Such appeal shall be lodged with such court by the filing of a petition against the board and issuance of summons to such board. The board shall thereupon have prepared and certify to a transcript of its proceedings and the appeal shall be heard upon such transcript and the decision of the board shall not be modified or reversed unless such court shall find that such decision was unlawful, unreasonable or against the manifest weight of evidence. Either party shall have the right to appeal from the Court of Common Pleas as in other civil cases.''

The factual questions are not in serious dispute. Mabel Braden Crowe had worked for the Brown-Brockmeyer Company, for more than four years prior to January 1940. The building of the employer is a one room building, 500 feet long and about 90 feet wide. It was a monitor type building, constructed about ten years ago. In the elevation and on the sides are a great many windows. There is a receiving door in one end of the room and a delivery door at the other end. These doors are about six feet in width. At the side and near the center is a door for entrance of employees. The room was heated by air being blown over hot steam pipes by fans and in this way circulated through the room. There is no automatic regulation of the temperature, but a fireman is kept to regulate it. Mrs. Crowe was working in about the center of the building. During the winter of 1939 and 1940 Mrs. Crowe suffered from colds at various times and was absent from work quite frequently. The only

testimony presented in the record was that of Mrs. Crowe and Mr. Sheeaberger, the latter being employment manager for The Brown-Brockmeyer Company.

Mrs. Crowe testified that the doors at the end of the building, as well as the employees' door, were frequently open, and at such times the drafts were bad throughout the building, especially in and around where she was working. She further testified that on January 22, 1940, she quit because of being sick with a cold and fever; that she had been suffering with colds most of the winter and it got colder right along, and the colder it got, the more she was troubled; that during the winter she was subject to frequent colds.

Mrs. Crowe filed her claim on February 5, 1940, and reported that she was then ready for work, but not for work where she was subject to severe drafts, the weather still being cold. She reported weekly thereafter to the local office of the Bureau of Unemployment Compensation seeking employment, in accordance with the statutory requirements. She was interviewed on several occasions by prospective employers, but she did not secure work. Her job at The Brown-Brockmeyer Company was open for her at all times from the date she quit on January 22, 1940. On two or three occasions she was specifically requested by the manager to return to work. On April 24, 1940, she took employment with another concern but only remained there two days. On April 26, 1940, she returned to her job with The Brown-Brockmeyer Company.

From the time Mrs. Crowe severed her relations with her employer until her return, she was continuously under the care of a physician. In addition to having a very severe cold, she had a congested lung. Very regularly she called at her doctor's office for treatment. At first, she was treated daily; thereafter weekly, and finally every two weeks. At the time Mrs. Crowe was

working, the company had approximately 225 employees, of which 60 were women.

There is no evidence that any other employee suffered from colds, as did Mrs. Crowe.

The board of review in its written opinion affirming the referee's allowance of claim, stated in substance that Mrs. Crowe was justified in leaving her employment. The fact that the working conditions were not injurious to other employees would make no difference, if such were injurious to her health; that since plaintiff was justified in her separation from employment in her former shop she was also justified in refusing to return to that work in the absence of improved working conditions; that the provisions of the statute prescribing availability for work means suitable work.

The Common Pleas Court reversed the board of review, principally upon the ground that the word "suitable" was attached as a provision, whereas the statute contains no such provision.

In the briefs of counsel for appellant, among other things, reference is made to findings of unemployment commissions in other states but it is pointed out that in most of these cases the pertinent sections of the law contain the language "suitable work."

The chapter in the Code providing for unemployment compensation covers a great many sections, but after reading the chapter in its entirety we arrive at the conclusion that the determination of this case depends upon a construction of Section 1345-6, General Code (118 Ohio Laws, 266).

It is conceded that unemployment compensation is in no sense sick benefits.

The first part of Section 1345-6, General Code (118 Ohio Laws, 266), read as follows:

"Each eligible individual shall receive benefits as compensation for loss of remuneration due to total or

partial unemployment in the amounts and subject to the conditions stipulated in this act.''

This provision at once leads to the inquiry as to who is an ''eligible individual.'' The remaining portion of the section under numbered specifications designates the individuals not entitled to compensation. Only subdivisions one and two are necessary to be considered, although a reading of the other subdivisions may be helpful to a more complete understanding of the act.

We quote from this section of the Code:

''(b) No individual shall be entitled to any benefits unless he or she

(1)   Is capable of and available for work;

(2)   Is unable to obtain work in his usual trade or occupation or any other employment for which he is reasonably fitted including employments not subject to this act, or is suffering loss of remuneration by reason of involuntary partial unemployment (as defined in Section 1345-1).''

We think these two subdivisions must necessarily be considered together.

In our judgment subdivision one is applicable and determinative under the facts of the instant case. This means capable and available for work she had been doing. It is undisputed that the job was open, but claimant was not capable of or available to take the job.

Subdivision two is intended to meet situations where the vacated job is not available. Under such situation where the employee is not able to obtain work in his usual trade of occupation, then he or she must be available for some other employment for which she is reasonably fitted including employment not subject to this act.

The word ''fitted'' used in this subdivision refers

to training or experience. It is not synonymous with the word "suitable", as argued by counsel for appellant. Neither can we agree with counsel for appellant when they say that claimant's physical condition should be taken into consideration in determining employment for which she was reasonably fitted. It would be correct to say that she was not fit to do the work for which she was fitted. A better rounded sentence would be to say that by reason of her physical condition she was not fit to do the work for which through experience and training she was fitted. It necessarily follows that she was not available for work. This was due to her physical condition. We have no difficulty in agreeing with the finding of the board of review that claimant was justified in leaving her employment, but when we consider that she left her employment by reason of her physical condition, it can not follow that thereby she would be entitled to unemployment compensation. Nowhere in the chapter on unemployment is any reference made to justifiable retirement from employment. As heretofore stated, unemployment compensation can not include sick benefits. On the contrary, in order to have unemployment compensation the employee must be available for work. It very frequently happens that certain employees are allergic to normal working conditions where they are employed. It is a matter of common knowledge that people with very severe cases of asthma have difficulty in continuing their employment. This condition may become so serious that they could not work at all except in an air conditioned room. This would not mean that the employer would have to provide such a room. Of course, the employee in the interest of preserving his health would be justified in leaving the employment. Thereafter he could not receive unemployment compensation unless he is available for

work. At this day and age there is statutory provision for supervision of workshops. The superintendent has authority to see that they are properly heated and ventilated and other normal working conditions provided for. This would not mean that every work shop must be so regulated as to meet anything more than normal conditions and situations.

We think the trial court was correct in its statement that the board of review was in error in its construction of the applicable section of the law. Nowhere in the section does the word "suitable" appear, and it would be improper to supply it.

In addition to what the trial court stated in its opinion, we have given our own interpretation of the law with a somewhat different approach.

Counsel for appellant in their brief complain that the trial court did not follow the provisions of the Code and make a finding that the decision of the board of review was either unlawful, unreasonable or against the manifest weight of the evidence. This requirement is found in Section 1346-4, General Code (118 Ohio Laws, 35), effective February 28, 1939. While this section designates the procedure as an appeal, yet under its language it is nothing more than an error proceeding. The trial court could not hear the appeal *de novo*. We are inclined to the view that it would be preferable for the trial court to follow the language of the section and make specific determination that the decision was either unlawful, unreasonable or against the manifest weight of the evidence. If the decision in any sense hinged on the matter of the weight of the evidence, we would give more serious concern to this claim. However, there is no substantial conflict in the evidence. In basing the decision wholly upon a question of law, we are unable to conclude that this omission is in any sense prejudicial.

Appellant's petition specifically set out the claim that the decision was unlawful, unreasonable and against the manifest weight of the evidence. The court in its entry finds that the plaintiff is entitled to the relief prayed for.

The judgment of the Common Pleas Court will be affirmed and costs in this court adjudged against the appellant.

*Judgment affirmed.*

GEIGER, P. J., and HORNBECK, J., concur.