16812

HARTSVILLE COTTON MILL v. SOUTH CAROLINA
EMPLOYMENT SECURITY COMMISSION
(79 S. E. (2d) 381)

*Messrs. Jas. Julien Bush* and *Robert G. Horine,* of Columbia, *for Appellant, S. C. Employment Security Commission,*

*Messrs. Paulling & James,* of Darlington, *for Respondent,*

The following is the order of Judge Lewis:

This action was instituted by the plaintiff-employer under Section 6(i) of the South Carolina Unemployment Compensation Law, Section 7035-86(i) of the Code of Laws of South Carolina, 1942, and is in the nature of an appeal from

a decision of the South Carolina Employment Security Commission.

From the record before me the following facts appear. The defendant, Doris T. Lambert, was employed by The Hartsville Cotton Mill for a period of approximately five months prior to January 22, 1951, on which date she was discharged for irregular attendance. Mrs. Lambert worked on the third shift during the entire period of such employment except for a few days worked on the second shift just prior to her discharge. On April 11, 1951, she signed and filed the Commission's Form UCB-101, designated "Initial Claim", whereon she stated that she thereby registered for work, that she was available for work and able to work, that she would accept work on only the second shift, and that "I had been working on third shift ever since I began to work. I changed shifts the last week I worked and worked second shift. I thought the change was permanent but at the end of the week they told me I had to go back to work on third shift. I could not go back to work on the third shift as I had let *me* cook go and had no one to keep my children on the third shift. My husband works third shift and he can keep the children while I work second shift." An Initial Determination dated May 7, 1951, was made by a claims examiner of the Commission holding that claimant was "Unavailable—Ineligible", that the claim was valid, that claimant's benefit year began April 11, 1951, that the weekly benefit amount was $20, and that the net maximum benefit was $360. Plaintiff appealed from those portions of the Initial Determination which held the claim to be valid and which established a benefit year, a weekly benefit amount and a net maximum benefit amount. The testimony of Mrs. Lambert, of her husband and of witnesses for The Hartsville Cotton Mill was then taken before an Appeals Referee. Thereafter, by its decision, dated August 20, 1951, the South Carolina Employment Security Commission found that the third shift was that of Mrs. Lambert's most recent employ-

ment and held that she "changed her domestic relations in such fashion that she could no longer work" on that shift and that, under the case of *Judson Mills v. South Carolina Unemployment Compensation Commission*, 204 S. C. 37, 28 S. E. (2d) 535, "the claimant cannot be deemed as available for work and, hence, she is ineligible for unemployment compensation." The Commission's decision affirmed the Initial Determination in its holding that claim was valid and in setting up a benefit year, a weekly benefit amount and a net maximum benefit amount. This action was then commenced by plaintiff in the Court of Common Pleas of Darlington County, and is in the nature of an appeal from those portions of the Commission's decision last hereinabove mentioned.

From the pleadings and from the briefs filed by counsel, it appears that the issue here is whether a claimant who is found to be "Unavailable—Ineligible", or who fails to meet any of the other benefit eligibility conditions of Section 4 of the Unemployment Compensation Law, Code Section 7035-84, can file a valid claim for benefits, as such term is used in that Law, upon which there can be established a benefit year, a weekly benefit amount and a net maximum benefit amount. For a determination of the question, reference is made to the exceedingly technical provisions of the Unemployment Compensation Law.

Section 19(b), Code Section 7035-99(b), defines the word "Benefits" as "the money payments payable to an individual as provided in this Act, with respect to his unemployment."

Section 4, Code Section 7035-84, provides in part that:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that. * * *

"(b) He has registered for work * * *.

"(c) He is able to work and is available for work. * * *"

Section 6(a), Code Section 7035-86(a), provides that "Claims for benefits shall be made in accordance with such regulations as the commission may prescribe. * * *"

Implementing Section 6(a), Commission Regulation XII, A, 1, (a), provides:

*"Initial Claims:* Any individual claiming benefits or waiting period credits for total unemployment shall report in person at the Employment Service Office * * * and shall thereon, on Form UCB-101, set forth that he (1) registers for work, and (2) files a claim for benefits. Such a claim shall constitute the individual's registration for work and his claim for benefits or waiting period credits."

Section 6(b) (1), Code Section 7035-86 (b), (1), provides for a review of the claim by an examiner designated by the Commission and for an Initial Determination thereon to be made.

Section 19(p), Code Section 7035-99(p), defines "Benefit year" as "the 52 consecutive-week period beginning with the first day of the first week with respect to which the individual first files a valid claim for benefits". Section 19(*o*), Code Section 7035-99(*o*), defines "Base period" as the first four of the last five completed calendar quarters immediately preceding the first day of the benefit year. Section 3(b), Code Section 7035-83(b), determines the weekly benefit amount and the net maximum benefit amount to which a claimant is entitled and bases this determination upon the wages paid during claimant's base period.

From the foregoing it appears that there must be a "valid claim" for benefits before a benefit year, base period, weekly benefit amount and net maximum benefit amount can be determined. Benefits are defined to mean money payments, and by Section 4(c) of the Act, Code Section 7035-84(c), an unemployed individual is not eligible for such benefits or money payments, unless he or she is "available for work". Here the claims examiner and

the Commission have found as a fact that Mrs. Lambert was "Unavailable—Ineligible". Where a claimant files a claim for benefits for which he or she is not eligible, it would require a strained construction of the language of the Law to hold that such constitutes a "valid claim". I am constrained, therefore, to conclude that the decision of the Commission is in error in holding that the claim filed in this case was valid and in establishing a benefit year, a weekly benefit amount and a net maximum benefit amount. The holding that the claim is invalid finds further support in the fact that claimant did not register for work on the shift of her most recent employment.

It is an undisputed fact that Mrs. Lambert was not entitled or eligible to receive benefits, meaning money payments, at the time she filed the claim in question. Section 6(b) (1) of the Unemployment Compensation Law, Code Section 7035-86(b) (1), provides:

"An examiner designated by the commission shall review the claim. An initial determination thereon shall be made promptly and *shall* include a determination with respect to whether or not benefits are payable, *the week with respect to which benefits shall commence,* and the weekly benefit amount payable." (Emphasis added.)

The Initial Determination in this case did not, and under the facts could not, include a determination of the week with respect to which benefits shall commence for the reasons hereinabove stated, *i. e.*, Mrs. Lambert was not entitled to receive such benefits at the time she filed her claim, and would not be so entitled until some undetermined future date on which the grounds of her ineligibility might be removed. But the Act says that the Initial Determination *shall* include a determination as to when benefits shall commence, thereby evidencing the intention of the Act to be that a valid claim upon which an Initial Determination can be made cannot be filed until the claimant is eligible for benefits.

The case of *Brown-Brockmeyer Co. v. Herschberger,* Ohio App., 67 N. E. (2d) 820, 822, a decision of the Court of Appeals of Ohio, is in point. There, as here, it was an admitted fact that claimant was not entitled to any compensation at the time of filing the claim. The Ohio Bureau took the position, as did the Commission in this case, that it could "determine the claim a valid one, make certain base findings but determining that claimant at the present time is not entitled to any benefits but may be allowed such if in the future she comes within the spirit of the law." In response to this position, the Ohio Court of Appeals stated:

" * * * in our judgment, when the bureau found that claimant was not entitled to benefits, the petition should have been dismissed. Under Section 1346-4, G.C., 119 Ohio Laws, p. 846, provision is made for filing claims for benefits. It is further provided that the administrator or his deputy shall promptly examine any claims filed and on the basis of any fact found therein, shall determine whether or not the claim for benefits is valid and if valid, the week with respect to which benefits shall commence. This section certainly does not contemplate that the Bureau has the right to enter a judgment as to an existing valid claim, unless the facts are present through which it may find 'the week with respect to which benefits shall commence, the weekly benefits payable, and the maximum duration thereof.' * * *"

I consider this decision of the Ohio Court to be sound and for the reasons therein stated, and other reasons, reach a similar conclusion in this case.

The practical result of this litigation appears to relate to the advantages which the employee may derive from the fixing or "freezing" of the base period upon a claim filed when the employee is ineligible for benefits under the Act. Consideration has been given by me to the fact that the Unemployment Compensation Law is remedial in nature and should be liberally construed to give effect to its beneficent purposes. But, as was stated in the case of Judson *Mills v. South Carolina Unemployment Compen-*

*sation Commission, supra,* the Legislature, as a guide to the interpretation and application of that Law, saw fit to include in the Act a declaration of State policy whereby economic insecurity due to unemployment was declared a serious menace to the health, morals and welfare of the people of the State, and whereby involuntary unemployment was declared to be a subject of general interest and concern requiring appropriate action by the General Assembly to prevent its spread and to lighten the burden it entailed. The decision in that case held that the term "involuntary unemployment", as used in the declaration of policy, had reference to unemployment resulting from a failure of industry to provide stable employment, and that it was not the intention of the Legislature "to provide benefits for a worker compelled to give up his job solely because of a change in his personal circumstances." [204 S. C. 37, 28 S. E. (2d) 537.] It is an undisputed fact in the case before me that Mrs. Lambert's unemployment did not result from the failure of her employer to provide stable employment, but arose out of a change in her domestic circumstances which rendered her unavailable for work. It must follow that while she is unavailable for work due to her own personal circumstances, she falls outside the class which the Act was intended to benefit.

*It is, therefore, ordered* that the Initial Determination of the claims examiner and Decision No. 51-C-99 of the South Carolina Employment Security Commission are in error in holding the claim of the defendant, Doris T. Lambert, to be valid and in establishing a benefit year, a weekly benefit amount and a net maximum benefit amount, and in these particulars the said Initial determination and decision are reversed and set aside.

December 29, 1953.

*Per Curiam.*

The order of Honorable J. Woodrow Lewis has been carefully considered in the light of the record and exceptions and we find ourselves in accord with the holdings therein.