17915

Adell H. SHERBERT, Appellant, v. Charlie V. VERNER, Ed. H. Tatum, Robert S. Galloway, Sr., as members of South Carolina Employment Security Commission, and Spartan Mills, Respondents.

(125 S. E. (2d) 737)

*Messrs. Dockery, Ruff, Perry, Bond & Cobb,* of Charlotte, N. C., and *Lyles & Lyles,* of Spartanburg, *for Appellant,*

*Jas. Julien Bush, Esq.,* of Columbia, *Attorney for the Respondent, South Carolina Employment Security Commission,*

*Messrs. Benjamin O. Johnson* and *Butler, Chapman & Barnes,* of Spartanburg, *for Respondent, Spartan Mills,*

288

*Messrs. Dockery, Ruff, Perry, Bond & Cobb,* of Charlotte, N. C., and *Lyles & Lyles,* of Spartanburg, *for Appellant,*

May 17, 1962.

Moss, Justice.

Adell H. Sherbert, the appellant herein, did, on July 29, 1959, file her claim with the South Carolina Employment Security Commission, one of the respondents herein, for unemployment compensation benefit under the "South Carolina Unemployment Compensation Law." Section 68-1 *et seq.,* 1952 Code of Laws of South Carolina.

The appellant, a textile employee, had worked for Spartan Mills, Beaumont Division, a respondent herein, for approximately thirty-five years. Immediately prior to June 5, 1959, she was working as a spool tender Monday through Friday, on the first shift, and her hours were from 7:00 A. M. until 3:00 P. M. On June 5, 1959, she was notified by her employer that, commencing June 6, 1959, she would be required to work on Saturday. This she refused to do, although the employer's plant, and other textile plants in the area, were operating on a six day basis, which included Saturday. Prior to June 5, 1959, Saturday work in Spartan Mills was on a voluntary basis and the appellant had not worked at any time between sundown on Friday and sundown on Saturday after she became a member, on August 5, 1957, of the Seventh Day Adventist Church. The appellant failed to report for work on six successive Saturdays and she was discharged on July 27, 1959, because of her refusal to work on Saturdays. The reason given by the appellant for

refusing to work on Saturdays was that for nearly two years prior to her discharge she had been a member of the Seventh Day Adventist Church and it was the teaching of her Church that the Sabbath begins at sundown Friday and ends at sundown Saturday, during which time she should not perform work or labor of any kind. The appellant applied for work at three other textile plants in the Spartanburg area but had been unable to find employment since these plants and practically all of the other textile plants in the area operated six days a week, including Saturday. The first, second and third shifts of Spartan Mills included work on Saturday.

It appears that on September 4, 1959, a claims examiner of the Commission, pursuant to Sections 68-152 to 68-154 of the 1952 Code, issued a determination holding that the appellant had been separated from her employment because she was unavailable for work as of July 28, 1959, and imposed a disqualification of five weeks, thereby preventing her from receiving unemployment compensation benefits for said period. He further held that the appellant was not available for the regular work week observed by Spartan Mills and by the textile industry in the area in which she worked.

The claimant appealed from the initial determination of the claims examiner to the Appeal Tribunal of the Commission, and hearing was held by an Appeals Referee pursuant to Section 68-160 of the Code, at which the testimony of the appellant and her witness was taken. On October 12, 1959, the Appeal Tribunal affirmed the determination of the claims examiner and held that the appellant had been discharged under disqualifying circumstances because she was not available for work as of July 28, 1959.

Pursuant to Section 68-161 of the Code, and within the time allowed by law, the claimant appealed from the decision of the Appeal Tribunal to the Full Commission. This appeal was heard by said Commission on December

16, 1959 and, thereafter, on December 18, 1959, the Commission rendered its decision in which it made findings of fact and conclusions of law affirming the decision of the Appeal Tribunal.

The appellant commenced an action on January 5, 1960, in the Court of Common Pleas for Spartanburg County, for the purpose of obtaining a judicial review of the decision of the Commission. Section 68-165 of the Code. The case was heard by The Honorable J. Woodrow Lewis, Presiding Judge of the Seventh Circuit. Thereafter, by a decree dated June 27, 1960, Judge Lewis affirmed the decision of the Commission, holding that a disqualification had been properly imposed upon the appellant and that, because of the restrictions which she had placed upon her availability for employment, she was unavailable for work within the meaning of the South Carolina Unemployment Compensation Law. Timely notice of intention to appeal to this Court was given by the appellant.

The first question for determination is whether the appellant was able and available for work, under the facts here involved, within the contemplation of the South Carolina Unemployment Compensation Law, or was she discharged for misconduct connected with her work. The determination of this question involves consideration of the two sections of the Unemployment Compensation Law which prescribe the general rules of eligibility for unemployment compensation benefits. These are Sections 68-113, which provides for basic conditions which have to be met in order to qualify; and Section 68-114 enumerates a series of disqualifications.

Section 68-113 provides that:

"An unemployed insured worker shall be eligible to receive benefits with respect to any week only if the Commission finds that:

"(1) He has made a claim for benefits with respect to such week in accordance with such regulations as the Commission may prescribe;

"(2) He has registered for work  *  *  *

"(3) He is able to work and is available for work  *  *  *."

Section 68-114 provides:

"Any insured worker shall be ineligible for benefits:

"(1) 'Leaving work voluntarily.' If the Commission finds that he has left voluntarily without good cause his most recent work prior to filing a request for determination of insured status  *  *  *

"(2) 'Discharge for misconduct.' If the Commission finds that he has been discharged for misconduct connected with his most recent work prior to filing a request for determination of insured status or a request for initiation of a claim series within an established benefit year  *  *  *.

"(3) 'Failure to accept work.' If the Commission finds that he has failed, without good cause, (a) either to apply for available suitable work, when so directed by the employment office or the Commission, (b) to accept available suitable work when offered him by the employment office or the employer  *  *  *."

At the 1955 session of the General Assembly of South Carolina, Section 68-114 was amended by adding to subdivision (3) thereof a subsection (a) (49 Stats. 490), the following:

"In determining whether or not any work is suitable for an individual, the Commission shall consider the degree of risk involved to his health, safety and morals,  *  *  *"

It is a fundamental principle of statutory construction that statutes must be construed in the light of the evil they seek to remedy and in the light of the conditions obtaining at the time of their enactment. *Judson Mills v. South Carolina Unemployment Compensation Commission, et al.,* 204 S. C. 37, 28 S. E. (2d) 535.

The public policy and the purpose of the enactment of the Unemployment Compensation Law of this State is fully set

forth in Section 68-36 of the 1952 Code and is declared to be as follows:

"* * * economic insecurity due to unemployment is a serious menace to health, morals and welfare of the people of this State; involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the General Assembly to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family; the achievement of social security requires protection against this greatest hazard of our economic life; this can be provided by encouraging the employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. * * *"

In the case of *Judson Mills v. South Carolina Unemployment Compensation Commission, et al., supra,* this Court adopted the decree of the lower Court, where with reference to the Unemployment Compensation Act, it was said:

"This statute was passed in 1936, at a time when this State, in common with the entire nation, was suffering from a prolonged depression which had resulted in industry laying off many workers, many of whom were left without the means of obtaining even the barest necessities of life. This unquestionably was the evil which the legislature was seeking to remedy. Unemployment due to changes in personal conditions of the employee, making it impossible for him to continue on his job had existed for many years, but there is no reason to believe that the evil resulting therefrom was any more pronounced in 1936 than it had been prior to that time. I find nothing in the act itself or in the circumstances surrounding its passage to indicate an intention on the part of the Legislature to provide benefits for a worker compelled to give up his job solely because of a change in his personal circumstances.

"It will be noted that one of the remedies proposed by the Legislature in its declaration of State policy was the encouragement of industry to provide more stable employment. In furtherance of this objective, the Act imposed upon the employer the entire burden of creating and maintaining a fund for the payment of unemployment benefits. * * *

* * *

"The primary purpose of this provision would be greatly impaired, if not completely defeated, if benefits were paid to persons who became unemployed, not because the employer could no longer provide them with work but solely because of changes in their personal circumstances. I am constrained, therefore, to conclude that in order to be entitled to benefits under the act the unemployed individual must be able to and available for the work which he or she has been doing."

It is obvious, therefore, that the fundamental purpose of the Unemployment Compensation Law is to protect against economic insecurity due to involuntary unemployment because of the inability of industry to provide stable employment and not to provide unemployment compensation where work is available and the employee is able to work and is available for such work.

In *Stone Mfg. Co. v. South Carolina Employment Security Commission, et al.,* 219 S. C. 239, 64 S. E. (2d) 644, it was held "that the term 'involuntary unemployment' as used in the declaration of policy, 'had reference to unemployment resulting from a failure of industry to provide stable employment', and that the statute was not intended 'to provide benefits for a worker compelled to give up his job solely because of a change in his personal circumstances.' " We quote from the *Stone case,* the following:

"The courts elsewhere generally recognize that the statute was enacted ' "for the benefit of persons unemployed through no fault of their own." ' *Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review,* 358 Pa.

224, 56 A. (2d) 254, 259. And it has been held that the word 'fault' as used in the declaration of policy is not limited to something that is blameworthy, culpable or wrong. *Moulton v. Iowa Employment Security Commission,* 239 Iowa 1161, 34 N. W. (2d) 211. In *Walter Bledsoe Coal Co. v. Review Board of Employment Security Division,* 221 Ind. 16, 46 N. E. (2d) 477, 479, the court said: 'Appellees say that the word "fault" means "something worthy of censure". We cannot believe that the word as used in the statute was intended to have such a meaning. ** * Thus "fault" must be construed as meaning failure or volition.' "

In the case of *Hyman v. South Carolina Unemployment Security Commission, et al.,* 234 S. C. 369, 108 S. E. (2d) 554, this Court held that where a claimant files an application for unemployment compensation benefits, the burden is upon the claimant to show that he has met the benefit eligibility conditions. It was further held that findings of fact made by the Security Commission are conclusive and this Court will not review such findings except to determine whether there is any evidence to support such findings.

The Commission has found that all of the textile plants, including the Spartan Mills, operate six days per week. The six day work week schedule of Spartan Mills was put into effect on July 5, 1959. The appellant remained on her job after notice that such a schedule had been adopted requiring all employees to work six days per week, Monday through Saturday. The appellant did not quit her employment but was absent, without permission, for six Saturdays, and because thereof her employer had to employ a substitute to do her work on Saturdays.

The appellant testified that she was able to work but she was not available for work between sundown on Friday and sundown on Saturday because it conflicted with her religious belief as a member of the Seventh Day Adventist Church. She further testified that she would not accept any employment requiring work during this period of time. She

further testified of making application to a number of other textile plants but since they all operated six days a week, she would not be interested in working in any of them. The appellant, being able to work, it must be determined whether she "is available for work" within the contemplation of the Unemployment Compensation Law.

The basic purpose of the requirement that a claimant must be available for work to be eligible for benefits is to provide a test by which it can be determined whether or not the claimant is actually and currently attached to the labor market, which in this case is unrestricted availability for work.

The case of *Unemployment Compensation Commission v. Tomko,* 192 Va. 463, 65 S. E. (2d) 524, 25 A. L. R. (2d) 1071, was one in which unemployed miners, who were willing to work only three days per week, in obedience to labor union officers' directive, instead of five days per week, as was customary in mining industry, were held not available for work within the Unemployment Compensation Act of the State of Virginia, and hence were not eligible for unemployment benefits. We quote from the cited case, the following:

"As used in the statute, the words 'available for work' imply that in order that an unemployed individual may be 'eligible to receive benefits' he must be willing to accept any suitable work which may be offered to him, without attaching thereto restrictions or conditions not usual and customary in that occupation but which he may desire because of his particular needs or circumstances. Stated conversely, if he is unwilling to accept work in his usual occupation for the usual and customary number of days or hours, or under the usual and customary conditions at or under which the trade works, or if he restricts his offer or willingness to work to periods or conditions to fit his particular needs or circumstances, then he is not available for work within the meaning of the statute.

"The courts have universally held that a claimant who, undertakes to limit or restrict his willingness to work to certain hours, types of work, or conditions, not usual and customary in the trade, is not 'available for work.' "

In 81 C. J. S., Social Security and Public Welfare, § 204, at page 304, it is said:

"A claimant may render himself unavailable for work by imposing conditions and limitations as to his employment, so as to bar his recovery of unemployment compensation, since a willingness to be employed conditionally does not necessarily meet the test of availability. Accordingly, it has been held that a claimant who undertakes to limit or restrict his willingness to work to certain days, hours, types of work, or conditions, not usual in his occupation or trade, is not available for work."

The availability for work requirement has been said to be satisfied when an individual is willing, able, and ready to accept suitable work or employment, which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. *Unemployment Compensation Commission of Virginia v. Dan River Mills, Inc.,* 197 Va. 816, 91 S. E. (2d) 642.

In the case of *Judson Mills v. South Carolina Unemployment Compensation Commission, et al., supra,* it was held that the claimant was unavailable for work where it appeared that, because of considerations personal to her, she became unavailable for employment on the third shift upon which she had been working. The claimant was a textile worker and the mother of four children. During her employment on the third shift a relative took care of her children and when such relative became unavailable for the care of the children the claimant quit her employment and limited her availability to either the first or second shifts. The lower Court and this Court concluded that the claimant was unavailable for employment within the meaning of the Unemployment Compensation Act and said there is "nothing in the Act itself

or in the circumstances surrounding its passage to indicate on the part of the Legislature to provide benefits for a worker compelled to give up his job solely because of a change in his personal circumstances."

In the case of *Hartsville Cotton Mill v. South Carolina Employment Security Commission,* 224 S. C. 407, 79 S. E. (2d) 381, the claimant, a textile worker, and the mother of young children, limited her availability for work to the second shift. She had previously worked on the third shift but had let her cook go and had no one with whom to leave her children. This Court approved an order of the lower Court which held that the claimant's "unemployment did not result from the failure of her employer to provide stable employment, but arose out of a change in her domestic circumstances which rendered her unavailable for work. It must follow that while she is unavailable for work due to her own personal circumstances, she falls outside the class which the Act was intended to benefit."

In *Kut v. Albers Super Markets, Inc., et al.,* 146 Ohio St. 522, 66 N. E. (2d) 643, app. dismd. *Kut v. Bureau of Unemployment Compensation of State of Ohio,* 329 U. S. 669, 67 S. Ct. 86, 91 L. Ed. 590, reh. den. 329 U. S. 827, 67 S. Ct. 186, 91 L. Ed. 702, it appears that a claimant was employed as an order clerk and as a checker in a super market. His employment was terminated by his refusal to continue to perform the work assigned to him. He was referred to two companies, each of which was willing to employ him as a shipping clerk. However, each company refused to accept him for the reason that he refused to work on Saturday, which because of his religious beliefs, he observed as his Sabbath. He filed an application for unemployment compensation and benefits were disallowed because the facts established that the claimant was unavailable for work on any Saturday. The Supreme Court of Ohio affirmed the disallowance of unemployment benefits to the claimant, saying:

"The statute does not designate particular days of the week. It provides that in order to be entitled to benefits a

claimant must be 'able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reasonably fitted.' Hence, he must be available for work on Saturday if this is required by his usual trade or occupation, as in this instance.

"Is this provision of the statute a violation of the constitutional right to religious freedom or the right to equal protection of the law? The plaintiff, like everyone else, is free to choose both his religion and his trade or occupation. If in making these voluntary choices he renders himself unavailable for work in his chosen trade or occupation or in any other for which he is reasonably fitted, he, like everyone else who fails to comply with the statutory requirement, is not entitled to unemployment benefits. Hence, the statute is not unconstitutional."

Here, the appellant attempted to limit or restrict her willingness to work to certain days and a certain shift, not usual in the textile industry in the Spartanburg area. She attached restrictions and conditions upon her continued employment with Spartan Mills because of her own particular circumstances and religious creed. It is implicit in the record that it is usual and customary for the textile plants in the Spartanburg area to operate on Saturdays and work was required of their employees on said days. The refusal of the appellant to work on Saturdays did not arise out of anything connected with her employment but was due to the fact that she had become a member of the Seventh Day Adventist Church. Her adherence to the tenets and dogma of the Seventh Day Adventist Church is not blameworthy or censorable, but her election to join that church was a matter personal to her and arose in no respect out of her employment.

Section 68-114(1) and (2d) of the Code, authorizes the Commission, in its discretion, to impose a disqualification in any case where an employee leaves his work voluntarily without "good cause" or is discharged for "misconduct connected with his most recent work." Section 68-114 (3) of

the Code, authorizes the Commission, in its discretion to impose a disqualification if it finds that the insured worker has failed "without good cause" to either apply for available suitable work or to accept suitable work when offered him by the employment office or the employer. It is then provided that in determining whether or not any work is suitable for an individual, the Commission shall consider the degree of risk involved to his health, safety and morals.

The undisputed testimony shows that the appellant had worked in the textile industry and for the Spartan Mills for thirty-five years. There can be no dispute that the appellant was experienced in the textile work in which the Spartan Mills was engaged. She was, therefore, capable and fitted to perform, by past experience and training, the work offered her by her employer.

In the case of *Sweeney v. Unemployment Compensation Board of Review*, 177 Pa. Super. 243, 110 A. (2d) 843, it was held that work offered mine workers which was identical with previous employment fell within the category of "suitable work" contained in statute providing that employee shall be ineligible for unemployment compensation for any week in which unemployment is due to failure, without good cause, to accept suitable work when offered to him by an employer. Likewise, in *Hess Bros. v. Unemployment Compensation Board of Review*, 174 Pa. Super. 115, 100 A. (2d) 120, it was held that work is "suitable work" within the meaning of the Unemployment Compensation Act disqualifying unemployment compensation claims for benefits for failure to accept offer of "suitable work" only if claimant is capable of performing the work.

In the case of *Stone Mfg. Co. v. South Carolina Unemployment Security Commission, et al., supra*, it was held that the words "good cause" as used in the Unemployment Compensation law contemplates, ordinarily at least, a cause attributable to or connected with claimant's employment. In the case of *Gatewood v. Iowa Iron & Metal Co.*, 251 Iowa

639, 102 N. W. (2d) 146, it was held that under a statute disqualifying an employee for unemployment compensation benefits for voluntarily quitting his work without good cause attributable to his employer, the "good cause" for which an employee may voluntarily quit work must involve some fault on the part of the employer. In the case of *Sun Shipbuilding & Drydock Co. v. Unemployment Board of Review,* 358 Pa. 224, 56 A. (2d) 254, it was held that where an employee quits employment because habits of his fellow employees are distasteful to him, because work offends his religious or moral principles, or because his family objects to the type of work, does not quit for "good cause" within the meaning of a provision of the Unemployment Compensation Act that employees shall be ineligible for compensation where unemployment is due to voluntarily leaving work without "'good cause". In the last cited case, the Court said: "A laudable motive for leaving employment and a 'good cause' within the meaning of the Act are entirely different things."

The appellant asserts that she should not be disqualified because Section 68-114, subdivision 3(a), of the Code, requires that in determining whether or not work is suitable for an individual, the Commission shall consider the degree of risk involved to her morals. As is heretofore stated, it cannot be said that there is any unsuitability of work in the Spartan Mills in which the appellant has been engaged for thirty-five years, nor can there be any risk to her morals involved in that type of work. When the General Assembly provided that in determining whether any work is suitable for an individual, the Commission should consider the degree of risk involved to morals, it obviously had in mind work, the character of which would be morally objectionable to any employee. No matter what the faith or creed of the employee was, we think this is made crystal clear because the Commission was required to consider also the degree of risk to the health and safety of the employee. Certainly, this had application to the kind and character of work in which the

employee was engaged. The appellant admits that the work she was called upon to perform in Spartan Mills is suitable work and does not involve any moral risk to her on any day except her Sabbath.

The appellant directs our attention to the cases of *Tary v. Board of Review,* 161 Ohio St. 251, 119 N. E. (2d) 56, and *Swenson v. Michigan Unemployment Security Commission,* 340 Mich. 430, 65 N. W. (2d) 709, and asserts that the holding in these cases should be controlling. We cannot agree with this contention for these two cases involve very different situations from that with which this Court is now confronted. In neither of these cases did the restrictions imposed by the claimants upon their availability for work have anything to do with the termination of their last employment. In neither case was it made to appear that the restrictions imposed by the claimants were inconsistent with the prevailing standard for similar work in the particular area involved. In the *Swenson case,* the Court was careful to point out that the Seventh Day Adventists were organized as a religious denomination in 1863 in Battle Creek, Michigan, and there were thousands of Seventh Day Adventists in that city and the community provided them with full time employment. The fact that one of the claimants refused to work from sundown on Friday until sundown on Saturday had no connection with the termination of their employment, because the opinion definitely asserts that the claimants were unemployed "due to lack of work." A careful study of the *Swenson case* convinces us that the community in which the claimants worked had adjusted itself to the beliefs of the Seventh Day Adventists and the opinion indicates that the prevailing standard of employment in the locality was consistent with their beliefs.

The *Tary case* involved a claim for unemployment benefits by a Seventh Day Adventist who refused a job referral involving Saturday work. The Court held, in a four to three decision, that under the statute, as amended, since the de-

cision in the *Kut case* above referred to, the claimant was not disqualified for benefits since her morals would be affected by having to violate her religious beliefs by working on her Sabbath. There was a strong dissenting opinion filed by Justice Hart, joined in by two other Justices. In our opinion, this dissent is logical and a realistic statement of the rule as we conceive it to be and we apply such to the factual situation here involved. We quote, therefrom, the following:

"In my opinion, the suitability of the work here offered, so fas as it related to morals, is not involved. If the work was properly suitable for another person as to morals, it was so suitable for the claimant so far as the character of the work itself was concerned. The claimant chose not to work because of a religious belief concerning the observance as the Sabbath of one of the days of the work-week period, which she had a perfect right to do. However, if she thus voluntarily disqualified herself on that account, she disqualified herself under the law to receive unemployment compensation for that same week period, including the day upon which she could not, because of religious belief, work in any event. Incidentally, the position of the claimant reveals an odd type of conscience, the philosophy of which precludes her from working on Saturday but approves her seeking of compensation for that same day of unemployment."

Our attention in also directed to a decision of the Supreme Court of North Carolina, In Re Miller, 243 N. C. 509, 91 S. E. (2d) 241, as sustaining the position of the appellant. It appears that Imogene R. Miller was employed by Cannon Mills, Inc., and during the period of her employment she became a Seventh Day Adventist, and because thereof she would not work as a spinner between sundown Friday and sundown Saturday. The Employment Security Commission of North Carolina held that since the employee restricted her services as stated she was not available for work. The North Carolina Supreme Court held that if the interpretation applied by the Commission was correct, then "the rationale of the statute would seem to be that in order to be eligible for

benefits a claimant must be 'available for work' at any and all times, night and day, Sunday and week days alike." If we placed this interpretation upon our unemployment compensation statute, such would be in conflict with Sections 64-4 and 64-5 of the Code, which makes it unlawful for an employer to require or permit an employee, especially a woman, to work in a mercantile or manufacturing establishment on Sunday, except as is provided in Section 64-6 of the 1952 Code.

The authorities cited and relied on by the appellant are either factually or legally distinguishable or are not considered controlling with us.

We conclude, in the light of the facts and circumstances of this case, that since the appellant was unwilling to accept work in her usual occupation for the usual and customary days and hours under which the textile industry works; and by restricting her willingness to work to periods or conditions to fit her own personal circumstances, then she was not available for work within the meaning of our Unemployment Compensation Law. Likewise, we find that the appellant failed to accept, without good cause, available suitable work offered her by her employer.

The appellant asserts that if this Court concludes, as we have hereinbefore, such construction violates her rights to religious freedom and to the equal protection of the laws guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and Article I, sections 4 and 5 of the South Carolina Constitution of 1895.

The right of a person to worship God in such manner and form as he may desire, with or without affiliation of any particular denomination or creed, is guaranteed by the Constitution of this State and by the Constitution of the United States.

However, our Unemployment Compensation Act, as is hereinbefore construed, places no restriction upon the appellant's freedom of religion nor does it in any way prevent

her in the exercise of her right and freedom to observe her religious beliefs in accordance with the dictates of her conscience.

In *Kuts v. Albers Super Markets,* above cited it was held that the Unemployment Compensation Act, when construed as not entitling one who refuses employment because of religious belief precluding Saturday work to benefits under the Act, is not unconstitutional as violative of constitutional right to religious freedom. It was further held that the allowance of unemployment compensation to one who refused employment because of religious belief precluding Saturday work, would be unconstitutional as discriminating in favor of such person. *Cf. Carolina Amusement Co. v. Martin,* 236 S. C. 558, 115 S. E. (2d) 273.

It is our conclusion that the decision of the South Carolina Employment Security Commission, as affirmed by the Circuit Court, was correct.

The exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

TAYLOR, C. J., and LIONEL K. LEGGE and WILLIAM L. RHODES, JR., Acting Associate Justices, concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting).

It is with reluctance that I find myself unable to concur in the majority opinion herein and feel conscientiously compelled to state my dissenting views thereabout. With only minor exceptions the facts are rather fully set forth in the majority opinion. I shall add thereto only the following facts.

It was stipulated by the parties that the decision of this court in the instant case shall control and be binding in the case of Sally W. Lloyd against the respondents, the issues in that case being the same as in the instant case. It appears from the record that the appellant and the said Sally W. Lloyd were the only two Seventh Day Adventists in the

Spartanburg area who were unemployed at the time of the hearing.

From World War II until June 5, 1959 work on Saturdays at Spartan Mills was optional with all employees. When appellant was notified on June 5, 1959 that commencing June 6, 1959 she would be required to work on Saturday, she acquainted her employer with her religious beliefs and declined to report to work on Saturday. There is no question as to her conscientious adherence to the teaching of her church that the Sabbath day begins at sundown on Friday and ends at sundown on Saturday, during which time Seventh Day Adventists do not perform work or labor of any kind. Thereafter, she continued to work for six weeks on the same, identical schedule that she had been working prior to the notice, and then was separated by the employer because of her refusal to work on Saturday. There is nothing in the record to indicate that she had been other than an exemplary employee for thirty-five years and the evidence is that she had never even been reprimanded for any misconduct. Prior to her separation from employment, the employer used a substitute for appellant when and as needed on Saturdays.

Appellant's claim for unemployment compensation benefits was filed on July 29, 1959, and up until the time of the hearing before the claims examiner, she had not been able to find other work, although she had applied for work at three other textile plants in the Spartanburg area, but had been unable to find employment since these plants, like most but not all other textile plants in the area, were at the time operating six days a week, including Saturdays. It appears that a new employee of a textile plant generally is required to work on either the second or third shift, either of which would require work beyond sundown on Friday, and, therefore, it is difficult, if not impossible, for appellant to obtain new shift work, even in a textile plant operating on a five day week, which would not conflict with her Sabbath.

However, the record shows that the appellant was available for the very same work which she had been doing for many years prior to her discharge, and that she was able, willing and available for work in the textile industry or for any other available, suitable work which did not require her to violate her Sabbath. The fact, supported by the record, is that Seventh Day Adventists, including the appellant, are available for work in the labor market generally in the Spartanburg area. The record shows that there are approximately one hundred fifty Seventh Day Adventists in that area and that all of them, with the exception of the appellant and Sally Lloyd were, at the time of the hearing, gainfully employed but not working on their Sabbath.

Although the exceptions are several in number, there are only two exceptions which I deem necessary for this court to decide, they being as follows:

1. Was the appellant able and available for work within the contemplation of the South Carolina Unemployment Compensation Law?

2. Was the appellant discharged for misconduct connected with her work within the contemplation of the South Carolina Unemployment Compensation Law?

The answers to both of these questions involve the construction to be placed upon various sections of the South Carolina Unemployment Compensation Law, the pertinent provisions of which are set forth in the majority opinion and will not be repeated here.

This court recognized that the statutory law under consideration is to be liberally construed in order to effect its beneficent purpose. *Stone Manufacturing Co. v. South Carolina Employment Security Commission,* 219 S. C. 239, 64 S. E. (2d) 644. The precise questions here involved have not been passed upon by this court. However, for several reasons, little difficulty is involved in arriving at what I deem to be the correct answer to the first question. The instant case is clearly distinguishable from that line of cases wherein an

employee is held to be ineligible because the employee has quit work for purely personal reasons totally unrelated to the employment. The appellant here did not quit her employment of long standing and made no change in connection therewith which resulted in her discharge. She was faithfully discharging her duties, just as she had for thirty-five years in compliance with what had been the established practice of her employer for some fourteen years, and in keeping with her established, sincere and conscientious religious belief. The employer, on the other hand, made the decision to stop the practice of using a substitute, when needed, for the appellant on Saturdays, and forced her to thereafter either work in violation of her Sabbath or be discharged.

In the cited personal convenience case of *Judson Mills v. South Carolina Unemployment Compensation Commission,* 204 S. C. 37, 28 S. E. (2d) 535, the opinion of then Circuit Judge Oxner, adopted by this court, contains the following statement:

"I am constrained, therefore, to conclude that in order to be entitled to benefits under the act the unemployed individual must be *able to and available for the work which he or she has been doing.*" (Emphasis added.)

The opinion in that case quoted with approval from the opinion in *Brown-Brockmeyer Co. v. Board of Review, etc.,* 70 Ohio App. 370, 45 N. E. (2d) 152, 155, the following language:

"In our judgment subdivision 1 is applicable and determinative under the facts of the instant case. This means capable and available for the work she had been doing."

Here the appellant was admittedly able to do and available for the work which she had been doing for many years, but which work the employer decided to change to a schedule which conflicted with her Sabbath.

Even if the foregoing be not a sufficient answer to the first question, it must be borne in mind that the provisions

of Secs. 68-113 and 68-114, being *in pari materia,* have to be construed together. Sec. 68-113 prescribes basic conditions which have to be met in order to qualify for benefits, while Sec. 68-114 enumerates a series of disqualifications; together they provide the overall formula governing the right to benefits. To make a claimant eligible only in the event he is willing to accept work without any limitation whatsoever, but to disqualify him under Sec. 68-114 only in the event he should refuse to accept "suitable work" would fix it so that the disqualification would be meaningless since a person willing to take only "suitable work" would always be ineligible in the first instance by virtue of Sec. 68-113.

There is a presumption against inconsistency and where there are two or more statutes on the same subject, in the absence of an express repealing clause, they are to be harmonized and every part allowed significance, if it can be done by any fair and reasonable interpretation. *Locke v. Dill,* 131 S. C. 1, 126 S. E. 747; *First Presbyterian Church of York v. York Depository,* 203 S. C. 410, 27 S. E. (2d) 573. I, therefore, conclude that the words "available for work" and "able to work and is available for work" as used in the statute mean "able to work and is available for *suitable* work" in the same sense as the words "suitable work" are used in Sec. 68-114.

Section 68-114(3) (a) expressly commands the Commission to consider the degree of risk involved to one's morals in determining whether or not work is suitable for a particular individual.

It is urged by respondents that when the legislature made the provision about "risks to morals" it had in mind only work the character of which would be morally objectionable to any employee regardless of the moral or religious beliefs of the particular employee. This contention is answered by the specific provisions of Sec. 68-114(3) (a) which uses the words *"suitable for an individual,* the Commission shall consider the degree of risk involved to *his* * * * morals."

(Emphasis added). This clearly shows that the legislature intended that the Commission should take into consideration the moral risk involved to the particular claimant, rather than applying the test of what might or might not be morally objectionable to claimants collectively or to the public in general. It might not be amiss to point out that there is far from a unanimity of opinion on moral issues and that it would be exceedingly difficult, if not impossible, to say in all instances just what would or would not offend the morals of the public in general. It may very well be that the legislature had these fundamental facts in mind when it adopted the specific language of the statute making the risks to the morals of the individual claimant the test.

The respondents further urge that the statute in its entirety must, of course, be construed in the light of the evil which it sought to remedy, and in the light of conditions obtaining at the time of its enactment. They contend that the factual situation here does not bring this case within the evils sought to be remedied by the enactment of the statute, it being shown that one of the principal objectives of the statute was to "provide more stable employment." They argue that claimant's separation from her employment did not result from the failure of industry to provide stable employment.

. Here, the claimant enjoyed stable employment provided by industry, one employer, for a period of thirty-five years, and moreover, stable employment which did not conflict with her religious beliefs. The appellant, in 1959, made no change in her religious faith which led to her discharge, nor did she attach any new condition to her stable employment of many years duration. The decision, the change, was made by the employer when it elected to no longer put a substitute in appellant's place on Saturdays, as it had done in the past. The only change or decision made by anyone at or near the time of appellant's separation from her employment was made by the employer and not by the employee. The employer simply elected not to continue to provide the

particular employee the stable employment which had been provided for years.

Moreover, the general language of the declaration of policy contained in Section 68-36 is in the nature of a preamble to the specific provisions of the Act and the specific language of Sec. 68-114 is a very definite limitation on the provisions in the preamble. *Johnson v. Pratt,* 200 S. C. 315, 20 S. E. (2d) 865.

The precise issues involved in this appeal have not previously been before this court. However, the question of whether or not a Seventh Day Adventist is to be deprived of unemployment compensation benefits because of refusal to work on Saturday has been before the Supreme Courts of Michigan, Ohio and North Carolina, all of whom have decided the issue favorably to the contention of the appellant here. No appellate court decision to the contrary has come to my attention.

It is stated in appellant's brief and not challenged by the respondents here that the vast majority of State Commissions which have considered the problem under discussion have decided in favor of claimants such as the appellant here. Reference is made in the brief of appellant to a publication of the Labor Department of the Federal Government entitled Benefits Series Service, Unemployment Insurance, available at the office of the South Carolina Unemployment Security Commission, according to which Service the States of Arizona, California, Colorado, Connecticut, Idaho, Illinois, Kansas, Maryland, Michigan, New York, Pennsylvania, Tennessee, Virginia, Washington and the District of Columbia have held administratively that persons who refuse to work on their Sabbath were not ineligible for benefits.

While none of these authorities is binding upon us, they strongly persuade me to the view that we should not lightly adopt or adhere to the position taken by the respondents here.

The North Carolina case of *In Re Miller,* 243 N. C. 509, 91 S. E. (2d) 241, is more nearly in point with the instant case than any other. That case arose in Rowan County, North Carolina, approximately one hundred miles from Spartanburg. Rowan County has a large textile industry and there was a finding of fact that 95% of the job openings in the textile plants of the area would require work in violation of the Seventh Day Adventist Sabbath. The claimant was a Seventh Day Adventist and was discharged by Cannon Mills because she would not work on her Sabbath, and she was denied benefits on the theory that she was not "available for work". The North Carolina statute is substantially identical with the South Carolina statute. On the facts and statute law almost identical with those in the present case, the North Carolina court had the following to say:

"We do not undertake to formulate an all-embracing rule for determining in every case what constitutes being 'available for suitable work' within the meaning of G. S. § 96-13. The phrase is not susceptible of precise definition that will fit all fact situations. Necessarily, what constitutes availability for work within the meaning of the statute depends largely on the facts and circumstances of each case. However, we embrace the view that work which requires one to violate his moral standards is not ordinarily suitable work within the meaning of the statute. And necessarily the precepts of a religious belief to which one conscientiously and in good faith adheres is an essential part of one's moral standards. Therefore, where, as here, a person embraces a religious faith, the tenets and practices of which impel her to treat as her true Sabbath the period from sundown Friday until sundown Saturday, and to refrain from all secular work during this period, it would offend the moral conscience of such person to require her to engage in secular work during such period.

"We conclude that to have forced the claimant to work on her Sabbath would have been contrary to the intent and purpose of the statute, G. S. § 96-13. The claimant, by re-

fusing to consider employment during her Sabbath, did not render herself unavailable for work within the meaning of the statute."

The Supreme Court of Michigan, independently of the morals provision in its statute, which incidentally is substantially identical with that of South Carolina, held Seventh Day Adventists to be entitled to benefits in the case of *Swenson v. Michigan Employment Security Commission,* 340 Mich. 430, 65 N. W. (2d) 709. In that case it was contended that certain claimants were not entitled to benefits because they stated in their applications for benefits that they could not work from sundown on Friday to sundown on Saturday because they were Seventh Day Adventists. The Supreme Court of Michigan, sustaining the lower court in reversing the Commission and holding these claimants entitled to benefits, said:

"The law is designed to apply to all situations within its contemplation, and the commission's attitude, if upheld, would completely exclude thousands of citizens of this State from the benefits of the act. That could never have been the intent of the legislature; nor should we so construe the act as to accomplish that result."

The Supreme Court quoted with approval the following from the trial judge in that case:

" 'To exclude such persons would be arbitrary discrimination when there is no sound foundation, in fact, for the distinction, and the purposes of and theory of the act are not thereby served. Seventh Day Adventists, as a matter of fact, do not remove themselves from the labor market by stopping work on sundown Friday and not resuming work until sundown Saturday, as is apparent from the reason that employers do hire them.' "

While admittedly Seventh Day Adventists are no doubt more numerous in the State of Michigan than they are in the State of South Carolina, and there are before us in the record no figures as to the total number thereof in this State,

it does clearly appear that there are approximately one hundred fifty of them in the Spartanburg area alone, all of whom are gainfully employed, other than the individuals concerned with this appeal. In addition to Seventh Day Adventists, there are, of course, many other citizens who conscientiously celebrate Saturday as the true Sabbath and it cannot be said that the legislature in the passage of the Unemployment Compensation Law had any intent or purpose to discriminate against these persons. Just as was the case in Michigan, these persons have not removed themselves from the labor market as is apparent in that, virtually all of them are employed.

In the Ohio case of *Tary v. Board of Review, etc.*, 161 Ohio St. 251, 119 N. E. (2d) 56, the claimant was employed until termination on November 11, 1949, and at no time during her period of employment was she required to work on Saturday. She applied for unemployment benefits and received benefits until she was referred for employment which would have required her to work half a day on Saturday. She refused to accept such employment because of her being a Seventh Day Adventist. The Supreme Court held her entitled to benefits and pointed out the fact that the General Assembly of Ohio by a 1949 amendment had adopted a statutory provision, R. C. § 4141.29, almost identical with the provisions of our Sec. 68-114(3) (a), dealing with risk to the morals of the individual. In that decision the court distinguished its earlier decision in *Kut v. Albers Super Markets, Inc.*, 146 Ohio St. 522, 66 N. E. (2d) 643, decided prior to the 1949 amendment, and one of the principal authorities relied on by the respondents here.

All of the above cited cases are, in my judgment, extremely well reasoned, logical decisions and of strong persuasive force with us.

The majority opinion seeks to distinguish these cases, but in my humble opinion, they are not truly distinguisha-

ble, bearing in mind that the various sections of our law, being *in pari materia,* have to be construed together. · The North Carolina case is, on the facts and the law, identical with the instant case. .

The recent case of *Texas Employment Commission et al. v. Hays,* Tex. Civ. App., 353 S. W. (2d) 924, did not involve a religious or moral issue, but strongly supports the position of the appellant here independently of the moral issue. In that case a high school student was available for employment on a very limited schedule but was available for work in suitable part time employment under the same part time employment conditions under which he had previously acquired his right to unemployment benefits. The court held that he was entitled to benefits. The holding there is entirely in keeping with the test of availability as laid down by this court in the *Judson Mills case,* the test being whether the claimant was available for the same work which he had been doing.

The respondents here cite no case in point from this or any other jurisdiction which sustains their position, but would urge this court to disregard the great weight of authority in other jurisdictions and adopt, without precedent, a different rule in South Carolina. They rely principally upon the cases of *Stone Manufacturing Co. v. South Carolina Employment Security Commission, supra,* and *Judson Mills v. South Carolina Unemployment Compensation Commission, supra,* and the Ohio case of *Kut v. Albers Super Markets, Inc., supra.* In addition, the majority opinion cites *Hartsville Cotton Mill v. South Carolina Employment Security Commission,* 224 S. C. 407, 79 S. E. (2d) 381.

The South Carolina cases are clearly distinguishable. They involved situations where women claimants had voluntarily quit the work which they had been doing for laudable but entirely personal, family reasons, unconnected with any religious belief, and in neither instance were they still available for the same work which they had been doing.

Here, appellant has been constantly available for the very same work which she had been doing for a long time before she was discharged and was, and is, still, available for any other work, her only limitation being that she would not work on her Sabbath. The appellant here is not unemployed as a result of any decision on her part which removed her either from her previous employment or the labor market generally.

In the *Kut case* the claimant was an Orthodox Jew who had been employed five days a week and was transferred to a position which required him to work on his Sabbath, to which he objected. His employer then offered to return him to his former position which required no work on his Sabbath and Kut declined, thus voluntarily making himself unavailable for the same work he had been doing all along, and it was on this basis that the Supreme Court of Ohio was unanimous in denying him the right to benefits. At the time of the *Kut case,* Ohio did not have the equivalent of our Section 68-114(3) (a) in its statutory law, which fact is specifically pointed out in *Tary v. Board of Review, supra.*

The language quoted in the majority opinion from the *Kut case, supra,* is, in my humble view, *obiter dictum* and was clearly so regarded by two members of the Ohio Supreme Court, it being totally unnecessary in that case to go any further than the simple basis upon which the Supreme Court was unanimous in denying Kut the right to benefits.

The cases of *Unemployment Compensation Commission v. Tomko et al.,* 192 Va. 463, 65 S. E. (2d) 524; *Unemployment Compensation Commission of Virginia v. Dan River Mills, Inc.,* 197 Va. 816, 91 S. E. (2d) 642; *Sweeney v. Unemployment Compensation Board of Review,* 177 Pa. Super. 243, 110 A. (2d) 843; *Hess Bros. v. Unemployment Compensation Board of Review,* 174 Pa. Super. 115, 100 A. (2d) 120; *Gatewood v. Iowa Iron & Metal Company,* 251 Iowa 639, 102 N. W. (2d) 146, and *Sun Shipbuilding*

*& Dry Dock Co. v. Unemployment Compensation Board of Review,* 358 Pa. 224, 56 A. (2d) 254, are all clearly distinguishable from the instant case, and, in my humble opinion, are simply not in point of the facts.

I shall not attempt to review the factual situations in each of said cases here, but do wish to point out that the case of *Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review, supra,* involved no issue of an employee quitting because habits of his fellow employees were distasteful to him, because the work offended his religious or moral principles, etc., and any language thereabout in the opinion of the Pennsylvania court is pure *obiter dictum.* The facts of that case were simply that the claimant had quit his job solely because he wanted to go into business for himself, in which he failed, and the court simply held that he had forfeited his status as an employee by said action and was, therefore, not entitled to benefits.

With respect to the second question, what has heretofore been said largely disposes of the same. The respondents contend that appellant was discharged for misconduct connected with her work. The evidence shows that she was discharged solely because she would not work on her Sabbath. Since appellant was available for work within the contemplation of the statute, she was not disqualified because she refused to accept work which was unsuitable within the purview of the statute. Therefore, her refusal to perform such work at the direction of her employer was not misconduct connected with her work within the contemplation of the South Carolina Unemployment Compensation Law.

In addition to the foregoing questions, the appellant contends that the ruling of the Commission and the lower court violated the right of claimant to religious freedom and equal protection of the laws guaranteed by the first and fourteenth amendments to the Constitution of the United States and Aricle I, Sections 4 and 5 of the South Carolina Constitution of 1895.

The majority opinion disposes of these questions by saying that our Unemployment Compensation Act places no restrictions upon the appellant's freedom of religion and by relying upon the *obiter dictum* language in the *per curiam* opinion from *Kut v. Albers Super Markets, supra*. This disposition of the constitutional questions does not, to my mind, squarely meet the issues. The appellant does not contend that the Act in itself in any sense is unconstitutional, but does contend that the construction placed thereon by the Commission, the lower court and the majority opinion, is in violation of her constitutional rights to both religious freedom and equal protection of the laws. It is worthy of note that in addition to two members of the Ohio Supreme Court, the United States Supreme Court regarded the language in the *per curiam* opinion in the *Kut case* dealing with the constitutional issues as nothing more than *obiter dictum* The United States Supreme Court refused to consider the constitutional questions in the *Kut case* solely on the ground that the State court's decision was based on a non-federal ground adequate to support it, the non-federal ground being that Kut was denied benefits because he refused to return to his former employment where no violation of his Sabbath was involved. 329 U. S. 669, 67 S. Ct. 86, 91 L. Ed. 590.

In my view, this case would be correctly disposed of by reversing the order of the lower court to the end that the cause might be remanded to the South Carolina Employment Security Commission with direction that an award be made to the claimant in accord with the views hereinabove expressed. If we so disposed of the case, there would be no constitutional questions involved. In view, however, of the decision of the majority, the constitutional questions are, of course, still present. I shall not here discuss at length or attempt to decide these constitutional questions but do feel that they are serious enough to require very full consideration before deciding to affirm the judgment of the lower court.